**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TONY SANDOVAL, JR.,

    Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant-Appellee.

No. 06-2097
(D.C. No. CIV-05-806-LCS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

   Plaintiff-appellant Tony Sandoval, Jr. appeals from an order of the

district court affirming the Commissioner's decision denying his application for

Social Security disability and Supplemental Security Income benefits (SSI).

Mr. Sandoval filed for these benefits on October 23, 2002.  He alleged disability

---

[*]  After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

based on a back injury and possible arthritis, numbness in both arms and hands, and fatigue from an inability to sleep. The agency denied his applications initially and on reconsideration.

On September 15, 2004, Mr. Sandoval received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that Mr. Sandoval retained the residual functional capacity (RFC) to perform the full range of light work. The ALJ found that he could not return to his past relevant work, but that there were a significant number of other jobs which he could perform in the national or regional economy. Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.18 (the grids), the ALJ concluded that Mr. Sandoval was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education and work experience. *See id.* at 751.

On appeal, Mr. Sandoval raises issues pertaining to the ALJ's treatment of the medical evidence, his application of the grids, and the district court's affirmance of the ALJ's decision without access to a complete hearing transcript. We reverse and remand for further proceedings.

**1. Reliance on the grids**

Mr. Sandoval contends that the ALJ erred in applying the grids to find him disabled. "[A] large body of circuit precedent preclud[es] use of the grids unless the claimant's RFC precisely matches the RFC specified for the grid relied upon." *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004). Where the claimant suffers from non-exertional impairments such as pain, conclusive reliance on the grids is improper. *See id.* "[A]n ALJ may not rely conclusively on the grids unless he finds . . . that the claimant has no significant nonexertional impairment." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

The ALJ recognized Mr. Sandoval's back pain as a severe impairment at step two. The frequent indications of pain in the medical record support this conclusion. The ALJ's step-two finding makes it impossible to conclude at step four that Mr. Sandoval's pain was insignificant. The ALJ therefore erred by relying conclusively on the grids. On remand, he must assess the level of pain Mr. Sandoval suffers, and determine whether there are jobs he can do with that level of pain.

We note, also, as Mr. Sandoval points out, that the ALJ failed to explain what specific evidence supports his finding that Mr. Sandoval can perform the full range of light work. On remand, the ALJ should identify the evidence on which he relies, indicating his reasons for concluding that it outweighs the opinion of Mr. Sandoval's treating physician, Dr. Vujan, that Mr. Sandoval is limited to sedentary work.

Mr. Sandoval also contends that the limitations created by his carpal tunnel syndrome (CTS) preclude him from performing the full range of light work. Mr. Sandoval underwent surgery for his CTS in March 2004. In May 2004, a physical therapist identified as a goal that Mr. Sandoval should regain functioning in his hands. The Commissioner, noting that CTS symptoms were not mentioned in reports from two July 2004 medical visits, concluded that the surgery must have been successful in relieving his symptoms, and the goal achieved. A record submitted to the Appeals Council, however, that is now part of the administrative

record, *see* Aplt. App., Vol. II, at 9, 217, indicates that in September 2004, Mr. Sandoval continued to experience pain six months after the surgery when using either hand for an extended period of time. In assessing Mr. Sandoval's RFC on remand, the ALJ should therefore carefully consider whether he experiences any ongoing reduction in function or pain due to his CTS that would affect his ability to work.

### 2. ALJ's assessment of medical evidence

Mr. Sandoval argues that the ALJ improperly rejected the medical opinion of his treating physician, Dr. Vujan. Dr. Vujan began treating Mr. Sandoval in August 2003. In October 2003, he completed a physician's questionnaire and a functional RFC assessment expressing his opinions concerning the effect of Mr. Sandoval's impairments on his ability to work.

In the questionnaire, Dr. Vujan explained that he had diagnosed Mr. Sandoval with chronic back pain, CTS, and depression.[1] He treated these conditions with referrals to physical therapy and orthopedic care, education, and symptomatic pain relief with medications. Dr. Vujan opined that Mr. Sandoval would need five to six rest breaks per day, lasting thirty to forty-five minutes each, and that he was able to work "0" hours per day. *Id*. at 179. He stated, "I do

---

[1]     The ALJ considered the very limited references to depression in the record, and determined that no evidence demonstrated the presence of depression as a severe impairment in Mr. Sandoval's case.

not believe that this patient will ever be able to gain or maintain gainful employment." *Id.*

With regard to the specific elements of Mr. Sandoval's RFC, Dr. Vujan stated that he could sit for two hours at a time, and stand or walk for less than an hour at a time each. During an eight-hour day, he opined, Mr. Sandoval could sit for a total of six hours, stand for four hours, and/or walk for two hours. He could frequently lift or carry up to five pounds, and occasionally lift or carry up to ten. He could frequently use his right hand to grasp or do fine manipulation, and occasionally his left. Dr. Vujan found no limitation on Mr. Sandoval's ability to use his feet for repetitive motion as in pushing or pulling of leg controls. He would limit Mr. Sandoval to occasional bending and crawling, and restrict him from climbing. He also would restrict him from unprotected heights and from being around moving machinery.

Dr. Vujan also expressed his opinion that Mr. Sandoval's condition was permanent. He explained that Mr. Sandoval

> is incapacitated from chronic low back pain and bilateral carpal tunnel syndrome that have become unresponsive to physical therapy and most conventional therapies [including] epidural injections, muscle relaxants, [and] many pain medications. It is my opinion that these symptoms are unlikely to improve and severely impair [his] overall level of function.

*Id.* at 182.

Addressing these opinions, the ALJ stated:

Dr. Vujan has submitted a questionnaire in which he offers specific limitations which place Mr. Sandoval at the "sedentary" exertional demand level. Dr. Vujan also offers the opinion that Mr. Sandoval must rest several hours per day, and that he would be unable to gain or maintain gainful employment. He characterizes Mr. Sandoval as incapacitated from chronic pain and carpal tunnel syndrome. . . .

[. . .]

A reasonable interpretation of the medical and other evidence supports that Mr. Sandoval is capable of performing [light] work. First, there is no direct evidence in the medical record of a back pathology. There is reference to an MRI apparently disclosing degenerative disc disease, but the relative severity is not apparent. The most recent diagnostic imaging in the form of the CT scan done in March 2003 showed no discernable lumbar problems whatsoever. Mr. Sandoval's complaints of lower back pain have been consistent and are not completely discounted, but are not completely credited. I find no basis for Dr. Vujan's contention that Mr. Sandoval must rest for several hours per day or that he has significant functional limitations. Dr. Vujan's characterization that Mr. Sandoval is incapacitated is not supported by medical findings. The objective medical record simply fails to identify a back impairment which would reasonably translate into such limitations. Mr. Sandoval's carpal tunnel syndrome was treated relatively recently and there is no indication that this condition will not resolve as expected. Accordingly, I find that Mr. Sandoval retains a residual functional capacity compatible with the performance of at least "light" work.

*Id.* at 21.

Mr. Sandoval contends that this analysis is inconsistent with the framework for evaluating treating physicians' opinions described in our opinion in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). *Watkins* sets out the sequential analysis that an ALJ must follow when evaluating the opinion of a treating

physician. In the first step of this analysis, he must consider "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (quotation omitted). "If the answer to this question is 'no,' then the inquiry at this stage is complete," and he need not give the opinion controlling weight. *Id.*

If he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must next consider whether the opinion should be rejected altogether, or assigned some lesser weight. He does this by applying the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Watkins*, 350 F.3d at 1300. These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted).

If, after considering these factors, the ALJ assigns a less than controlling weight to the opinion, he must give good reasons for the lesser weight he assigns. *Id.* If he rejects it altogether, he must give "specific, legitimate reasons" for doing so. *Id.* (quotation omitted).

In the first stage of the analysis, the ALJ considered whether Dr. Vujan's opinion was well-supported by medically acceptable evidence. He determined that it was not. The ALJ gave adequate reasons for this conclusion. A CT scan showed no discernable lumbar problems. Mr. Sandoval underwent surgery for his CTS six months *after* Dr. Vujan expressed his opinion, and the ALJ found there was no evidence that the surgery had been unsuccessful. Having made these findings, the ALJ satisfied the first step of the analysis, essentially concluding that he was not obliged to give the opinion controlling weight.

As Mr. Sandoval points out, however, the ALJ was then required to turn to the second step of the analysis, in which he considers the regulatory factors in order to decide what weight, if any, to assign to the treating physician's opinion. The ALJ apparently rejected Dr. Vujan's opinion altogether, without discussion of the relevant factors set forth in §§ 404.1527 and 416.927. *See Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) (requiring analysis of relevant factors). While the ALJ's cursory dismissal of Dr. Vujan's sweeping statements involving Mr. Sandoval's need for rest breaks and his total inability to work probably met the requirements of the second and third steps of *Watkins*, we are less sanguine concerning his rejection of Dr. Vujan's specific conclusions regarding Mr. Sandoval's RFC, which essentially limited him to work at a sedentary level. It is unclear on what basis the ALJ rejected these conclusions, and how he applied the relevant factors in reaching his conclusion that

Dr. Vujan's RFC determination should be rejected. We must therefore remand to permit the ALJ to properly assess Dr. Vujan's opinion, using the specific criteria and analytical process laid out in *Watkins* and *Langley*.

Mr. Sandoval also contends that the ALJ should have re-contacted Dr. Vujan before rejecting his opinion due to lack of objective medical evidence. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source . . . does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam). However, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receives from [the claimant's] treating physician' that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (opinion on rehearing). Here, the ALJ did not find Dr. Vujan's opinion incomplete or in need of clarification; he simply found it inconsistent with the medical evidence. *See id.* We therefore conclude that the ALJ was not obligated to recontact Dr. Vujan, based on the findings he made.[2]

_____

[2] We express no opinion concerning whether the further findings we have ordered on remand concerning Dr. Vujan's treating physician's opinion might require the ALJ to re-contact him for clarification or for further evidence.

-10-

### 3. ALJ's treatment of other medical evidence

The ALJ concluded that "there is no direct evidence in the medical record of a back pathology." Aplt. App., Vol. II, at 21. Mr. Sandoval contends that this finding was erroneous, for several reasons. First, he contends that the ALJ erred in failing to discuss Dr. Frechette's diagnoses of degenerative disc disease and/or lumbar disc disease, which he contends is supported by both Dr. Frechette's findings and the examinations performed by physicians' assistants and physical therapists.

The ALJ was not required to discuss every piece of evidence contained in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). He needed only to discuss evidence he rejected if it was significantly probative. *Id.* at 1010. We conclude that, based on the evidence before him, the ALJ correctly determined that Dr. Frechette's diagnosis was not significantly probative and did not require specific discussion beyond a general rejection of the diagnosis of degenerative disc disease.[3]

A careful review of the record shows that the ALJ was correct in concluding that the evidence, including Dr. Frechette's records and the physical therapy records, does not objectively support a diagnosis of *disc degeneration or*

---

[3]     To the extent that Mr. Sandoval now argues that Dr. Frechette's diagnosis should have been analyzed under *Watkins*, we note that he failed to make this argument in his briefs in district court; we therefore do not consider this argument.

*disease*. A CT scan performed on March 4, 2003, for example, showed no evidence of disc herniation or protrusion. Aplt. App., Vol. II, at 148. Dr. Frechette thereafter noted that Mr. Sandoval had "back pain [secondary to] back spasm." *Id.* at 150. Spinal evaluations on March 19 and 31, 2003, noted "muscle spasm" as a cause for his back pain. *Id.* at 164, 166. A spinal evaluation dated April 8, 2003, described his pain as "of unknown etiology." *Id.* at 162. On the physician's questionnaire, completed October 17, 2003, Dr. Vujan identified the objective finding on which he diagnosed Mr. Sandoval's chronic back pain as "limited range of motion" and "tenderness." *Id.* at 178. While it is true that Dr. Frechette at times diagnosed Mr. Sandoval with degenerative disc disease and/or lumbar disc disease, the record before the ALJ did not contain any objective medical evidence, other than various range-of-motion tests, that would justify such a diagnosis. The ALJ's finding concerning the lack of direct evidence of back pathology therefore appears to be supported by substantial evidence.

Mr. Sandoval notes, however, that a patient referral notice dated December 11, 2002, stated that an MRI performed on May 23, 2002, had shown L4-5 disc degeneration. *Id.* at 174. The ALJ stated that the MRI result itself was not contained in the record before him, *id.* at 20,[4] and it was therefore impossible to

---

[4]     In his decision, the ALJ referred to a "June 2002" MRI, but the portion of the record he cited refers to the May 23, 2002, MRI.

-12-

determine the severity of the alleged impairment, *id.* at 21.  Mr. Sandoval

contends that the ALJ's reasoning is flawed because he failed in his duty to

attempt to obtain the MRI result.  We note, however, that the MRI result was

provided to the Appeals Council, which determined that it did not provide a basis

for review.  While the ALJ's alleged failure to obtain the MRI result by itself may

not justify reversal and remand, the existence of this result in the record does

bolster the need for a remand based on the grids and treating physician issues.

### 4.  Inaudibility of hearing transcript

Finally, Mr. Sandoval argues that the district court's decision is flawed

because there are many gaps due to inaudibility in the transcript of the September

15, 2004, hearing.  By our decision today, we are remanding this case to the

agency for further proceedings.  It is uncertain whether any additional judicial

review of the hearing transcript will be required in the future.  Under the

particular circumstances of this case, therefore, this claim is moot as to the

existing district court decision, and premature as to any future judicial decision.

In the event the agency determines that the transcript is required but deficient for

purposes of the proceedings on remand, it may of course take steps to rectify the

transcript or to conduct further hearings, as necessary.

The judgment of the district court is REVERSED, and the case is REMANDED to the district court, with instructions to remand to the Commissioner, to permit the ALJ to (1) conduct such further proceedings as are necessary to assess the level of Mr. Sandoval's back pain and any ongoing limitation posed by his carpal tunnel syndrome, and determine what jobs he can perform with that level of pain, given any other limitations posed by his RFC; and (2) correctly evaluate the opinion of Dr. Vujan.

Entered for the Court

Stephen H. Anderson
Circuit Judge