**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SUSAN M. GILBERT,

      Plaintiff-Appellant,

  v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security,

      Defendant-Appellee.

No. 06-1137
(D.C. No. 05-CV-407-PSF)
(D. Colo.)

---

**ORDER AND JUDGMENT**[**]

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

Claimant Susan M. Gilbert appeals a district court order affirming the

denial of her two applications for Social Security disability benefits. We have

jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further

proceedings.

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this matter.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On appeal Ms. Gilbert argues that (1) the administrative law judge (ALJ) did not properly consider her treating physician's opinions, resulting in a residual functional capacity (RFC) that was not supported by substantial evidence, (2) the ALJ did not properly evaluate her credibility, and (3) the ALJ's determinations that she could do her past relevant work, as well as other work in the national economy, were not supported by substantial evidence and are contrary to applicable law. We review the Commissioner's decision to determine whether his "factual findings are supported by substantial evidence in the record viewed as a whole and whether [he] applied the correct legal standards." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

> Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. In order to determine whether the Secretary's decision is supported by substantial evidence, we must meticulously examine the record. However, we may neither reweigh the evidence nor substitute our discretion for that of the Secretary.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted).

## *Treating Physician Opinions*

The ALJ found that Ms. Gilbert had four severe impairments: obesity, fibromyalgia, peripheral neuropathy and status-post left knee arthroplasty.[1] The ALJ concluded that she had an RFC for sedentary work, with specified limitations including the ability to stand and stretch each hour, but no restrictions on using her hands. The ALJ's RFC also indicated that she had several slight mental deficits and a moderate limitation in responding appropriately to work pressure. In making these findings regarding her RFC, the ALJ gave minimal weight to the opinions of her treating physicians and considered her not fully credible.

Ms. Gilbert argues specifically that in formulating her RFC, the ALJ did not give adequate weight to the opinions of Dr. Stuart Kassan, her treating rheumatologist. She contends that the limitations in his opinions pertaining to sitting, standing and walking, lifting and carrying, and use of her hands and arms would have precluded her from being able to perform any substantial gainful activity. She asserts that the ALJ failed to adequately consider any of the required factors in assessing the weight to be given to Dr. Kassan's opinions and that the ALJ failed to consider her fibromyalgia in evaluating those opinions.

---

[1] For a description of fibromyalgia, *see* discussion *infra* p. 10. Peripheral neuropathy is "a disease involving . . . the peripheral . . . nervous systems." *Stedman's Medical Dictionary* 1204 (26th ed. 1995). Arthroplasty is the "[c]reation of an artificial joint" or "[a]n operation to restore as far as possible the integrity and functional power of a joint." *Id.* at 150.

A treating physician's opinion qualifies for "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations omitted). "Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R.] § 404.1527." *Id.* (quotation and brackets omitted). Those relevant factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quotation omitted); *see also* § 404.1527(d). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (quotations and alterations omitted).

As the ALJ acknowleged, Dr. Kassan began treating Ms. Gilbert in January 2000. Her medical records indicate that she continued to see him at the time of

the hearing before the ALJ in 2004. Dr. Kassan completed two work capacity evaluation forms, the first in April 2001 and another in April 2003. In each case he concluded that she was not capable of performing work activity on a regular and sustained basis. In 2001 he opined, in relevant part, that she could lift ten to fifteen pounds occasionally and less than ten pounds frequently; she could stand and walk less than one hour each in an eight-hour work day and without interruption for only ten minutes; she could sit for only two hours and without interruption for only one-half hour; and she could never climb, stoop, crouch, kneel, or crawl. He also indicated that reaching, handling, fingering, feeling, and pushing/pulling were all affected by her impairment, specifically stating that she could only occasionally handle, finger or feel. Dr. Kassan's 2003 opinion differed significantly only to the extent that he stated she could *never* handle, finger or feel.

In affording minimal weight to Dr. Kassan's 2001 opinion, the ALJ specifically relied on a lack of objective test findings in the record, for instance: "an assessment of mild axonal peripheral neuropathy . . . based on EMG testing," Aplt. App., Vol. 3 at 1004; "X-ray and MRI findings [failing] to reveal more than mild degenerative changes of the . . . spine," *id.*; "straight-leg raise testing negative," *id.* at 1006; and "X-rays . . . [showing] mild degenerative changes of the knees bilaterally," *id.* The ALJ also noted Ms. Gilbert's positive response to physical therapy in 1999 for complaints of cervical and shoulder pain, as well as

-5-

her regular exercise regimen, which at that time included swimming one-half to one mile three times a week, riding a stationary bike, walking, and weight-training. While acknowledging that later findings regarding her knees did support a restriction to sedentary work, the ALJ determined that "no *objective findings* [suggested a] restriction to less than 6 hours of sitting per day so long the claimant has the opportunity to stand and stretch once per hour." *Id.* (emphasis added). The ALJ ultimately concluded that "none of these findings support the degree of impairment indicated by Dr. Kassan in April 2001. Accordingly, this assessment is afforded minimal weight." *Id.*

The ALJ likewise gave little weight to Dr. Kassan's 2003 opinion. In doing so, she focused on treatment reports for Ms. Gilbert's hands, knees and back. As to her hands, the ALJ acknowledged Ms. Gilbert's reports of increased pain in her thumbs in 2002 and her two thumb arthroplasty surgeries, but noted the positive results of each surgery, as described by her surgeon, Dr. Fry: she was "doing well . . . with good stability and no grinding or pain in her left thumb" and she "demonstrated good position and motion of the right thumb, with no sharp pain as previously reported." *Id.* The ALJ also noted that Dr. Fry told Ms. Gilbert she could resume crocheting, "an activity presumably inconsistent with any significant manipulative limitations." *Id.* The ALJ found no ongoing, specific hand or thumb complaints, or manipulative restrictions placed upon her by any of

-6-

her treating physicians, in subsequent treatment records.[2] Ultimately, the ALJ concluded that her treatment records were inconsistent with Dr. Kassan's 2003 opinion that she could never handle, finger, or feel.

As noted above, the ALJ concluded that the findings regarding Ms. Gilbert's knees, which eventually required left knee arthroplasty in August 2003, were consistent with a restriction to sedentary work. The ALJ relied on treatment records from her surgeon indicating that she was "doing well following surgery" and that he "observed dramatically improved gait the following day and released [her] from formalized therapy." *Id.* at 1007. The ALJ found absent in the treatment records any ongoing complaints by Ms. Gilbert regarding losing her balance or needing a cane to keep from falling.

Regarding her back pain, the ALJ found that a month before Dr. Kassan issued his April 2003 opinion, Ms. Gilbert complained of knee tenderness, but there was "no indication of any low back complaints or findings that would significantly affect [her] capacity for sitting." *Id.* She also denied any cervical spine pain two months later and a cervical MRI again showed only mild narrowing. The ALJ also observed that Ms. Gilbert's neurological examinations remained mostly normal.

---

[2] Additionally, the ALJ found that, although the medical records showed that Ms. Gilbert complained of shoulder pain in early 2004, a later record from Dr. Kassan indicated it was getting better a short time later.

As with the earlier opinion, the ALJ gave Dr. Kassan's 2003 opinion little weight, concluding that,

> [Dr. Kassan's] clinical findings and those of the other treating and examining sources cited above not only support an ability to engage in sedentary exertional activity, consistent with the residual functional capacity found in this decision, they fail to establish any ongoing manipulative limitations due to the claimant's previous thumb surgeries or to her recent complaints of left shoulder impingement. Accordingly, little weight is given to the assessment . . . as it pertains to the claimant's current capacity for work-related physical functioning.

*Id.*

We disagree with Ms. Gilbert's contention that the ALJ failed to adequately consider any of the required factors in assessing the weight to be given to Dr. Kassan's opinions. It is clear from the ALJ's decision that she properly considered Dr. Kassan's area of specialty and the length, nature, and extent of the treatment relationship. To the extent Ms. Gilbert contests the weight given by the ALJ to these particular factors, she is asking us to reweigh the evidence, which we cannot do. *See Musgrave,* 966 F.2d at 1374. Regarding the other factors, although Ms. Gilbert argues that Dr. Kassan's opinions were consistent with his own treatment records and those of her other physicians, she fails to address any of the ALJ's specific conclusions with respect to inconsistencies between the treatment records and his opinions. Further, in support of this argument that Dr. Kassan's opinions are consistent with her medical records, she neither cites to nor discusses the voluminous appendix in this case. *See United States v.*

-8-

*Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) ("In the absence of essential references to the record in a party's brief, the court will not 'sift through' the record to find support for the claimant's arguments.").[3]

Instead, she argues that the only evidence in the record that could be considered *contrary* to Dr. Kassan's opinions regarding her functional abilities is contained in two RFC forms completed by the state agency at the commencement of her two applications, and that those forms cannot constitute substantial evidence. But the ALJ did not rely solely on either of the state agency RFC forms in formulating her RFC. The ALJ did note that the state agency assessments generally supported a greater capacity for work functioning than she alleged and therefore provided further support of a capacity for at least sedentary work activity. In determining her RFC, however, the ALJ expressly considered her subjective complaints and the history she provided to her physicians, written information she provided to the Social Security Administration, medical signs and findings, and the opinions of her treating and examining sources. The Commissioner has the final responsibility to determine a claimant's RFC by

_____

[3]   Ms. Gilbert does assert that Dr. Fry's records are consistent with Dr. Kassan's opinions, despite Dr. Fry's indication that she was capable of "light" work, because there is no indication that he understood the meaning of that term as it is used in the disability context. But she does not address the ALJ's finding that Dr. Fry's records failed to document any ongoing, specific hand or thumb complaints or manipulative restrictions following her surgeries.

making an administrative decision based upon all the relevant medical and other evidence in the record.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3).

We agree, however, with Ms. Gilbert's final claim of error regarding the ALJ's treatment of Dr. Kassan's opinions.  She argues that, having determined that her fibromyalgia was a severe impairment, the ALJ failed to sufficiently consider that condition, and the functional limitations that can be caused by it. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination. . . .").  She asserts that the ALJ seems to have misperceived the nature of the condition.  The Commissioner does not address this argument in his brief.

This court has recognized that "[b]ecause proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (quotation and alteration omitted).  As described by the Seventh Circuit:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and–the only symptom that discriminates between it and other diseases of a rheumatic character–multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Here, although the ALJ acknowledged Dr. Kassan's conclusion in 2000 that Ms. Gilbert probably had a fibromyalgia-type syndrome, as well as his initial, clinical examination finding "multiple tender points over the spine, hips, knees and ankles," Aplt. App., Vol. 3 at 1005, the ALJ did not otherwise address that impairment, or the limitations it may cause, in determining to give the 2001 opinion minimal weight. Instead, the ALJ relied expressly on objective test results showing only mild degeneration in her back and knees and other test results indicating her peripheral neuropathy was also mild. The only other reasons cited by the ALJ for giving minimal weight to the 2001 opinion included one instance of successful physical therapy for cervical and shoulder pain in 1999 and the extent of her exercise, which she testified she was doing on her doctors' recommendations. Regarding the 2003 opinion, the ALJ again relied on a lack of objective findings with respect to her back, as well as two instances where she failed to complain to Dr. Kassan about back pain. While it was appropriate for the ALJ to assess the objective findings with respect to Ms. Gilbert's individual joints when considering her claims of disability based on arthritis and disc disease, the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia. *See Sarchet*, 78 F.3d at 306*; Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where ALJ failed to give controlling weight to treating physician opinion of disability based on fibromyalgia and

-11-

"effectively required 'objective' evidence for a disease that eludes such measurement").

Where later objective findings did indicate severe degeneration of Ms. Gilbert's hand and knee joints, the ALJ focused instead on the positive results of her joint replacement surgeries and a lack of specific complaints regarding those particular joints. Again, while it was proper for the ALJ to consider her lack of complaints regarding pain in specific joints, the ALJ failed to address whether there were reports in the medical records of symptoms of fibromyalgia, i.e., diffuse pain, stiffness and/or fatigue, that supported Dr. Kassan's opinions.

In evaluating Dr. Kassan's 2003 opinion the ALJ did mention two treatment notes referencing her fibromyalgia. Dr. Kassan had found mild paraspinal tenderness in May 2003 and the ALJ construed that same record as indicating her fibromyalgia was considered "stable and without flares." Aplt. App., Vol. 2 at 627, Vol. 3 at 1007.[4] The ALJ also referenced the final record from Dr. Kassan in March 2004, in which he opined that she was "overall doing somewhat better," and interpreted it to indicate that her fibromyalgia was "improved." *Id.*, Vol. 2 at 621, Vol. 3 at 1007. But the ALJ failed to address the existence of numerous other treatment records from Dr. Kassan noting Ms. Gilbert's fibromyalgia, as well as

---

[4]    The ALJ also mentioned another treatment note by Dr. Kassan nine months later that indicated she was "doing well," but that comment does not reference fibromyalgia and the ALJ failed to mention that Dr. Kassan found paraspinal tenderness at that visit. Aplt. App., Vol. 2 at 622, Vol. 3 at 1007.

findings of "tender points" in various places. *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[T]he Act makes clear that the Secretary must consider all relevant medical evidence of record in reaching a conclusion as to disability."). Although an ALJ need not discuss every piece of evidence, the record here fails to demonstrate that the ALJ considered all of the evidence with respect to Ms. Gilbert's fibromyalgia. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

In light of the ALJ's failure to sufficiently address Ms. Gilbert's fibromyalgia in assigning weight to Dr. Kassan's opinions regarding her physical functional capabilities, we reverse the denial of benefits and remand for further proceedings. We express no opinion, however, as to what weight the ALJ may assign those opinions on remand after giving appropriate consideration to her fibromyalgia.

### *Other Claims of Error*

Ms. Gilbert's testimony regarding her physical abilities was generally consistent with Dr. Kassan's opinions. She also testified to daily disabling pain in various parts of her body, including her hands, neck, shoulder, elbow, wrists, hips, legs, feet, and lower back, and she stated that she needed to rest several times a day–and sometimes the entire day–due to her pain. The ALJ did not consider her fully credible. Because the ALJ's assessment of Dr. Kassan's opinions and

Ms. Gilbert's credibility were substantially intertwined, on remand we direct the ALJ also to consider her fibromyalgia in reevaluating her credibility.

In light of the remand of this case, we do not reach the remainder of Ms. Gilbert's claims on appeal, except to hold that she has waived appellate review of certain of these arguments. Specifically, she failed to argue in the district court that there was not substantial evidence to support the ALJ's determination that her previous work was as a "nurse consultant," based upon material differences between the DOT description of that job and her actual prior work as a telephone triage nurse. Nor did she argue below that she could do neither her past relevant work, nor the other work identified by the vocational expert, based on her moderate limitation in responding to work pressure.[5] *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) (declining to consider arguments not presented to the district court). Finally, she also failed to present to

---

[5] Ms. Gilbert's counsel represented that the issues in her appellate brief were raised below, and in an attempt to comply with 10th Cir. R. 28.2(b), she referred us to specific pages of her district court complaint. But nowhere on those pages did she raise either of these issues. *See Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1502 (10th Cir. 1994) (finding issue not properly before the court when appellant failed to demonstrate where in the record it was raised below). Although she did not include copies of her district court briefs in the Appellant's Appendix, we can take judicial notice of those filings in the District Court for the District of Colorado, Case No. 05-CV-407. *Cf. Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (observing that "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). A review of her district court briefs confirms that she never made these arguments to the district court.

the district court–and also failed to raise on appeal until her reply brief–her argument that the ALJ did not make the required findings of fact regarding the physical and mental demands of her past work. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1015 n.5 (10th Cir. 2002) ("We are not obligated to address an argument which was not made in the district court, nor even in this court until the reply brief.") (quotation and alteration omitted). Because of her failure to raise these issues below and the lack of a district court ruling on them, we deem them waived for purposes of appellate review.

The judgment of the district court is VACATED and the case is REMANDED to the district court with directions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

-15-