**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERTA LANGLEY,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

       Defendant-Appellee.

No. 03-7088

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CV-485-S)**

Submitted on the briefs:

Catherine Taylor of Perrine, McGivern, Redemann, Reid, Berry & Taylor,
P.L.L.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Sheldon J. Sperling, United States Attorney; Cheryl R. Triplett, Assistant United
States Attorney; Tina M. Waddell, Regional Chief Counsel; Michael
McGaughran, Deputy Regional Chief Counsel; and Amy J. Mitchell, Assistant
Regional Counsel, Office of the General Counsel, Region VI, Social Security
Administration, Dallas, Texas, for Defendant-Appellee.

Before **EBEL**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Claimant Roberta Langley appeals from a district court order adopting the magistrate judge's recommendation to affirm the Commissioner's denial of her application for Social Security disability benefits. Claimant contends on appeal that the administrative law judge (ALJ) did not properly evaluate the opinions of her treating physicians and erred in determining that she does not have any severe impairments. We reverse and remand for further proceedings. [1]

BACKGROUND

Claimant applied for disability benefits on June 1, 2000, claiming an inability to work since December 1, 1997, due to rheumatoid arthritis, chronic fatigue, chronic headaches, depression, and reflux disorder. The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir.

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

1988). In this case, the ALJ determined that claimant was not disabled at step two of the evaluation process. At step two, it is the claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit her ability to do basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1521. After considering the medical evidence and conducting a hearing, the ALJ found that claimant had not met this burden.

## STANDARD OF REVIEW

We review the Commissioner's decision to determine whether the correct legal standards were applied and whether the Commissioner's factual findings are supported by substantial evidence in the record. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). This court may "neither reweigh the evidence nor substitute our judgment for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

EVALUATION OF TREATING PHYSICIAN OPINIONS

On appeal, claimant first contends that the ALJ failed to apply correct legal standards in evaluating the opinion of one of her treating physicians, Dr. Hjortsvang, and her treating psychiatrist, Dr. Williams. She contends the ALJ failed to afford their opinions proper weight and to provide specific, legitimate reasons for rejecting their opinions. We agree.

## Treating Physician Rule

According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. § 404.1527(d)(2). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To make this determination, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id*. (quotations omitted); *see also* § 404.1527(d)(2).

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'" *Id*. (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4).

Those factors are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (quotation omitted).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id*. at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id*. at 1301 (quotations omitted).

Dr. Hjortsvang's Opinion

Dr. Hjortsvang, who treated claimant for several months, completed a medical source statement in which he reported that claimant has fairly severe degenerative joint disorder with limited movement in her legs, knees, hips, and shoulders. Dr. Hjortsvang stated that claimant suffers from chronic pain and has limited mobility and decreased balance. Dr. Hjortsvang also reported that claimant can frequently lift only ten pounds; stand or walk less than one hour in an eight-hour day; sit three hours in a typical day, and can never climb, balance, kneel, crouch, or crawl, and can only occasionally stoop, reach, handle, or finger objects. Dr. Hjortsvang stated that he based his assessment of her limitations on his shoulder examinations of claimant showing she experienced pain when her shoulder was extended only ninety to one-hundred degrees and his observation that she usually walked with a stoop.

The ALJ rejected Dr. Hjortsvang's report, stating that his "opinion is wholly unsupported by the claimant's medical records, and, frankly, is ridiculous. There is no objective medical evidence of any impairment which could be expected to cause such limitations." Aplt. App. at 29. The ALJ found that Dr. Hjortsvang "did not describe a medically determinable impairment that could reasonably cause such limitations," and that his assessment was not well-supported by clinical signs because he failed to reference any medical

-6-

reports that supported his conclusions or indicate how his treatment of claimant supported his conclusions. *Id*. The ALJ stated that Dr. Hjortsvang's "assessment is clearly based upon the claimant's subjective complaints" and that "[h]is own treatment records clearly do not support his pessimistic functional assessment." *Id*. The ALJ wrote, "[a]ll in all, I find his account of the claimant's limitations to be more an act of courtesy to a patient, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies." *Id*. The ALJ found that Dr. Hjortsvang's assessment was unsupported by, and inconsistent with, the credible evidence of record, and declined to give it controlling weight.

Although claimant contends that Dr. Hjortsvang's opinion was entitled to controlling weight, she does not dispute the ALJ's finding that Dr. Hjortsvang's report is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Neither Dr. Hjortsvang's treatment notes nor his medical source statement indicate that he performed diagnostic tests to evaluate claimant's severe degenerative joint disease, such as X-rays, joint taps, magnetic resonance imaging, a bone scan, or computed tomography. Therefore, we conclude the ALJ was entitled to give Dr. Hjortsvang's report less than controlling weight. *See Watkins*, 350 F.3d at 1300.

The ALJ was not entitled, however, to completely reject Dr. Hjortsvang's opinion on this basis. As noted above, even if a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the [relevant] factors." *Id.* (quotation omitted).

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.

*Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). Here, contrary to the requirements of SSR 96-2p, the ALJ completely rejected Dr. Hjortsvang's opinion once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set forth in § 404.1527.

Moreover, some of the reasons given by the ALJ for rejecting Dr. Hjortsvang's opinion are not supported by the record. Contrary to the ALJ's finding, Dr. Hjortsvang's medical records *do* describe medically determinable impairments that could reasonably cause the described limitations. He stated in his medical source statement that claimant has severe degenerative joint disease with limited movement in her legs, knees, hips, and shoulders, and he states in all of his treatment records that claimant suffers from, among other things, osteoarthritis and migraine headaches. Aplt. App. at 514, 516, 521, 522, 539.

-8-

Further, Dr. Hjortsvang did indicate the basis of his assessment: shoulder examinations showing pain on abduction and his observation that she walked with a stoop.

Also contrary to the ALJ's finding, Dr. Hjortsvang's opinion is not "wholly unsupported" by the medical record. Dr. Hjortsvang's treatment notes consistently report that claimant is stiff, and has pain and limited mobility in her knees, hips, and shoulders, and he consistently prescribed medication for her joint disease. Consistent with these observations, Dr. Blaschke reported in 1997 that "some inflammatory rheumatic disease must be present since not only does [claimant] have impingement at both of her shoulders to account for a lot of her shoulder pain but she has got a synovitis at her right shoulder as well as synovitis at both ankles and in her right knee." *Id*. at 228. We do not mean to suggest that there are not conflicts in the medical evidence; the record does include reports from examining and consulting physicians who found no objective signs that claimant has rheumatoid arthritis or any autoimmune disorder. Nevertheless, the record does not support the ALJ's finding that Dr. Hjortsvang's opinion is "wholly unsupported" by the medical record. *Id*. at 29.

The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." *Id*. The ALJ had

no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." *Id.* at 1253.

Thus, the ALJ did not follow the correct legal standards in considering Dr. Hjortsvang's opinion, nor are the ALJ's reasons for completely rejecting his opinion supported by substantial evidence.

Dr. Williams

Dr. Williams, a psychiatrist, treated claimant for several months for depression. Dr. Williams completed a medical source statement opining that claimant had marked or moderate limitations in every category relating to understanding and memory, concentration and persistence, social interaction and adaptation, indicating that her depression seriously affects her ability to function

-10-

independently, appropriately, and effectively. Dr. Williams stated that claimant "is caught in a vicious cycle of major depression and chronic severe pain that make it impossible for her to work." Aplt. App. at 536.

The ALJ declined to give Dr. Williams's assessment controlling weight, finding that it was unsupported by, and inconsistent with, the credible evidence of record. The ALJ stated that Dr. Williams's opinion was "not supported by the objective evidence in this case, including his own records." *Id*. at 31. Repeating the same boilerplate phrase he used to reject Dr. Hjortsvang's opinion, the ALJ stated, "[a]ll in all, I find [Dr. Williams'] account of the claimant's limitations to be more an act of courtesy to a patient, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies." *Id*.

The ALJ provided a facially valid reason for not giving Dr. Williams's opinion controlling weight: that it was not consistent with other substantial evidence in the record. We find no obvious inconsistencies, however, between Dr. Williams's opinion and either his treatment notes or the other evidence in the record relating to claimant's depression. In his treatment notes, Dr. Williams diagnosed claimant with major depressive disorder with psychosis and with pain disorder. *Id*. at 529, 530, 531. He noted that she was depressed, though not suicidal or delusional, and noted that claimant hears voices. Dr. Williams

-11-

prescribed anti-psychotic medication. [2] He described claimant as being logical and coherent, with no gross cognitive problems, but also noted that she had a restricted range of affect and difficulty concentrating. Dr. Williams also stated in his treatment notes that claimant is unable to work. *Id*. at 496. As to the ALJ's statement that Dr. Williams's opinion is not based on "a genuine medical assessment of discrete functional limitations based upon clinically established pathologies," *id*. at 31, we note "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests," *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)). Thus, Dr. Williams's observations about claimant's functional limitations do constitute specific medical findings. *See id*.

Nor do we see obvious inconsistencies between Dr. Williams's opinion and the medical records of other examining physicians. A consulting physician, Dr. Sutcliffe, noted that claimant's history suggests she has depressive disorder. He concluded that claimant has diminished immediate and short term recall, "certainly" lacks the cognitive ability to do complicated tasks, such as beautician

---

[2]     The ALJ stated that claimant quit taking this medication. We do not find support for this statement. Rather, the treatment records indicate that Dr. Williams discontinued one anti-psychotic medication when claimant complained it made her feel like a zombie, but noted that claimant agreed to try another anti-psychotic medication, and later prescribed a different anti-psychotic medication. *Id*. at 532, 530.

work or driving a school bus, has a diminished ability to tolerate routine stressors, and might prefer to be alone and withdrawn. Aplt. App. at 238. Dr. Sutcliffe rated claimant's global assessment of functioning (GAF) score at 53, indicating moderate symptoms. [3] Another examining psychiatrist, Dr. Layeni, reported that claimant suffers from major depressive disorder, hears voices, has poor concentration, lethargy, hopelessness, guilt, decreased interest, and situational panic attacks. Dr. Layeni rated claimant's GAF score at 50, indicating serious symptoms.

Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not "sufficiently specific" to enable this court to meaningfully review his findings. *Watkins*, 350 F.3d at 1300 (quotation omitted). Without further clarification, the reason given by the ALJ for not giving Dr. Williams's opinion controlling weight does not appear to have been supported by the record.

---

[3] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." *Id*. at 34. A GAF score of 41-50 indicates "[s]erious symptoms. . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id*.

Furthermore, as with Dr. Hjortsvang, the ALJ did not follow through with the remainder of the analysis, that is, to specify what lesser weight, if any, should be assigned to the medical opinion, using all of the factors set forth in § 404.1527. *See id.* at 1301. And, also as with Dr. Hjortsvang, it was improper for the ALJ to reject Dr. Williams's medical opinion based upon the ALJ's speculative and unsupported conclusion that it was "an act of courtesy to a patient." Aplt. App. at 31.

Thus, the ALJ did not follow the correct legal standards in considering Dr. Williams's opinion, and absent clarification from the ALJ on remand, the reasons he gave for rejecting this opinion do not appear to be supported by substantial evidence.

STEP TWO DETERMINATION

Claimant next contends the ALJ erred in finding that she did not have a severe impairment or combination of impairments at step two of the evaluation process. She argues the ALJ's finding is not supported by substantial evidence because he failed to give proper weight to the medical evidence and to consider the cumulative medical evidence. Again, we agree.

The Supreme Court has adopted what is referred to as a "de minimus" standard with regard to the step two severity standard: "[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity'

-14-

can be denied benefits without undertaking" the subsequent steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 158 (O'Connor, J., concurring); *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b), including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.

The step-two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750. As discussed above, the ALJ did not follow the correct legal standards in evaluating the weight to be afforded the medical opinions of Dr. Hjortsvang and Dr. Williams, and many of the ALJ's factual findings with respect to those opinions are either not supported by substantial evidence in the record or are insufficiently specific to allow meaningful review. For this reason, there is not substantial evidence to support the ALJ's determination that claimant's impairments are not severe.

Moreover, the ALJ's decision does not indicate that he considered the cumulative effect of claimant's impairments. At step two, the ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If the claimant's combined impairments are medically severe, the Commissioner must consider "the combined impact of the impairments . . . throughout the disability determination process." *Id*.

The record shows that claimant suffered from joint disease or fibromyalgia, as well as chronic fatigue, migraines or chronic headaches, depression, and reflux disorder. The ALJ was required to assess the combined impact of these impairments to determine the effect, if any, they had on plaintiff's ability to do work-related activities. His failure to do so requires reversal of the decision.

Because the Commissioner did not apply the correct legal standards and her findings are not supported by substantial evidence in the record, we must remand this case for further proceedings. The judgment of the district court is REVERSED and this case is REMANDED to the district court with instructions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.