FILED
United States Court of Appeals
Tenth Circuit

February 25, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL R. CAGLE,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 07-5107
(D.C. No. 06-CV-95-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

Michael Cagle appeals from the judgment of the district court affirming the

Social Security Commissioner's denial of his application for disability insurance

benefits (DIB). Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C.

§ 1291, we reverse.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Mr. Cagle has a high school education plus one year of college. He began employment with Boeing Aircraft in 1985 and worked as an aircraft inspector, mechanic, and composite-parts bonder. He also has work experience as a security guard.

Mr. Cagle developed lower back pain as a result of a car accident in 1997 and was put on light duty at Boeing. In May 2002, one of his treating physicians, Dr. Jeffrey Galles, referred him for an MRI, which revealed a small central disc protrusion at the L4-L5 level and early degenerative disc disease. He completed physical therapy, showing improvement, but continued to have pain and decreased range of motion. He aggravated his back injury in August 2002 and missed some work. Dr. Galles assessed him with chronic mechanical low back pain and prescribed Bextra, an anti-inflammatory, for pain. Mr. Cagle also had a sleep study, which indicated he has severe sleep apnea.

In September and October of 2002, Mr. Cagle worked a sedentary job at Boeing but lost that position due to seniority issues. After a lumbar myelogram and computed tomography (CT) scan in October indicated that Mr. Cagle was not a candidate for surgery because he had no neural compression, Dr. Galles referred him to a pain management specialist, Dr. Srikanth Reddy, who began a series of epidural steroid injections (ESIs) in December 2002 and recommended that Mr. Cagle, who is morbidly obese, lose weight and observe good posture.

On September 18, 2003, Dr. Galles completed Boeing's Return to Work/Functional Capacities Form, stating that Mr. Cagle had been medically unable to work from October 16, 2002, through October 1, 2003, due to his back problems, but could return to work on October 2, 2003, subject to certain restrictions. Mr. Cagle returned to work at Boeing for seven days in October 2003, but his pain forced him to stop again. He continued treatment with Drs. Galles and Reddy for his back pain as well as carpal tunnel syndrome (CTS) diagnosed by a nerve conduction study in February 2004 and several other maladies, and he has not worked since. In October 2004, Dr. Reddy completed a residual functional capacity (RFC) questionnaire reflecting limitations that would preclude Mr. Cagle from performing even a limited range of sedentary work on a sustained and continuing basis.

Meanwhile, Mr. Cagle filed his application for DIB on March 23, 2003, with an alleged onset date of October 23, 2002. He claimed that he was disabled due to gout in his right big toe joint, pain in his lower and mid-back, and pain and numbness in both hips, legs, and feet. After the agency denied his application initially and upon reconsideration, an administrative law judge (ALJ) held a hearing at which Mr. Cagle and a vocational expert (VE) testified. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, finding at step one that Mr. Cagle was not engaged in any substantial gainful activity. At steps two and three the ALJ found that Mr. Cagle has a

severe impairment based on medical findings of gout, diabetes,[1] obesity,

depression, and problems with his back, hips, legs, feet, hands, wrists, right

elbow, knees, neck, arms, and shoulders, but that none of his impairments met or

equaled a listed impairment. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1.

Proceeding to step four, the ALJ surveyed the medical evidence and found

that Mr. Cagle retained the RFC to

> perform light and sedentary work activity. He is able to occasionally
> lift and/or carry 20 pounds occasionally and 10 pounds frequently;
> stand and/or walk 6 hours in an 8-hour workday at 2 hour intervals;
> sit for 6 hours in an 8-hour workday at 2 hour intervals; and can
> occasionally climb, bend, stoop, squat, crouch, crawl, kneel, twist his
> torso, twist and nod his head, reach overhead, operate foot controls,
> and push/pull. The claimant would be slightly limited in feeling,
> fingering, and grasping, and would need to avoid cold, damp
> environments; vibration; rough uneven surfaces; unprotected heights;
> and fast and dangerous machinery. Due to his symptoms of
> depression and medication side-effects, the claimant would be
> limited to simple, routine and repetitive work activity and would be
> slightly limited in contact with the public, coworkers, and
> supervisors. The claimant is afflicted with symptoms from a variety
> of sources, to include mild to moderate, chronic pain, that are
> sufficiently severe as to be noticeable to him at all times; but, that
> nonetheless the claimant would be able to remain attentive and
> responsive in a work setting, and could carry out normal work
> assignments satisfactorily. The claimant takes medication for relief
> of his symptoms; however, those medications do not preclude him
> from functioning at his residual functional capacity and he would
> remain reasonably alert to perform required functions in the work
> setting.

---

[1]    We are perplexed by the ALJ's reference to diabetes since elsewhere in his
decision the ALJ acknowledged Mr. Cagle's hearing testimony that he has
hypoglycemia, not diabetes. *See* Aplt. App., Vol. II at 23.

Aplt. App., Vol. II at 25-26, ¶ 5 (citation omitted).  In further explanation of his RFC finding, the ALJ noted, among other things, that Mr. Cagle has degenerative disc disease of the lumbar spine and a mild disc bulge without spinal canal stenosis or nerve root impingement.  The ALJ explained that his RFC finding was supported by the findings of state agency physicians, and gave little weight to the RFC assessments by Drs. Galles and Reddy.  The ALJ also found that Mr. Cagle was not fully credible regarding the extent of his limitations—his pain was limiting but not severe enough to preclude all work.

Based on this RFC, the ALJ determined that Mr. Cagle could not return to his past relevant work.  At step five, the ALJ found that Mr. Cagle could perform a number of sedentary and light jobs the VE identified that exist in significant numbers in the national economy.  Accordingly, the ALJ determined that Mr. Cagle was not entitled to DIB.  Mr. Cagle was forty-two years old at the time of the ALJ's March 8, 2005, decision.

Mr. Cagle requested review by the Appeals Council and submitted additional evidence:  (1) a Boeing Return to Work/Functional Capacities Form completed by Dr. Galles on March 14, 2005, indicating that Mr. Cagle was medically unable to work from October 22, 2003, through May 9, 2005, but could return to an inspection or desk job thereafter subject to exertional and postural limitations; and (2) medical records from Claremore Indian Hospital that included a prescription for a wheelchair dated March 17, 2005.  The Appeals Council

added the new evidence to the record but denied the request for review, summarily stating that the new evidence provided no basis for changing the ALJ's decision. After the district court affirmed the Commissioner's decision, Mr. Cagle appealed to this court.

## II.

On appeal, Mr. Cagle alleges three main errors in the Commissioner's decision, that the ALJ (1) failed to perform a proper evaluation of the opinions of his treating physicians, Dr. Galles and Dr. Reddy; (2) made an improper credibility determination; and (3) failed to make a proper step-five determination.[2] Our review is to determine whether the Commissioner's "factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997) (quotation and citation omitted). However, "we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Id.* (quotation omitted).

---

[2] Mr. Cagle also contends, in conclusory fashion, that the Appeals Council erred by not explaining why the additional evidence he submitted was insufficient to alter the ALJ's decision. We fail to see where this issue was adequately raised in the district court or any reason to deviate from the general rule that we do not consider such issues, *see Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). In any event, in view of our remand, we would not reach the merits of this contention even if it was preserved for appeal.

A.     *Evaluation of the Treating Physicians' Opinions*

The ALJ gave little weight to the opinions expressed in the RFC forms completed by Mr. Cagle's treating physicians, Dr. Galles and Dr. Reddy. We will first address Mr. Cagle's arguments with respect to Dr. Galles, with which we agree, and then turn to his arguments concerning Dr. Reddy, with which we agree in part.

## Dr. Galles

Dr. Galles saw Mr. Cagle approximately nine times between May, 2002, and completing his first RFC assessment on September 18, 2003. In that assessment, he opined that Mr. Cagle had been unable to work from October 16, 2002, through October 1, 2003, but could return to work on October 2, 2003, with certain restrictions. Although Mr. Cagle could, in Dr. Galles's opinion, sit for 6 to 8 hours in a work day, he would be limited to standing and walking up to 3 hours each and lifting or carrying no more than 20 pounds occasionally (0 to 3 hours). He also would be subject to a number of postural limitations but could use his hands for repetitive motion and reach above his shoulders frequently (3 to 6 hours per work day). As mentioned above, Mr. Cagle indeed returned to work for seven days in October 2003, but reported that he could not continue due to hand numbness and intolerable lower back pain that radiated into his legs.

The ALJ afforded "little probative weight" to Dr. Galles's assessment because of "troubling inconsistencies in Dr. Galles'[s] medical records." Aplt.

App., Vol. II at 23. Mr. Cagle argues that this terse explanation is legally insufficient because the ALJ did not consider any of the factors for weighing treating physician opinions that are set forth in 20 C.F.R. § 404.1527(d).[3] He also contends that Dr. Galles's opinion as to Mr. Cagle's RFC is entirely consistent with Dr. Galles's own medical records.

We agree that the ALJ's explanation is legally insufficient. And although we fail to see troublesome inconsistencies in Dr. Galles's medical records that undermines his RFC assessment, we defer to the agency to make a formal finding on this issue, as necessary. But before explaining our conclusion, we first outline why Dr. Galles's RFC assessment is material to this case.

Dr. Galles found that Mr. Cagle could stand for up to 3 hours and could walk for up to 3 hours, whereas the ALJ found that Mr. Cagle could stand and/or walk 6 hours in an 8-hour work day at 2-hour intervals. Although the difference

---

[3]     As we have summarized, those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

between these two views of Mr. Cagle's ability to stand and walk may be subtle, we cannot say the two views are the same in relation to the jobs at the light exertional level that the VE identified. Also, to perform jobs at the light exertional level, a person must also be able to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, *see* 20 C.F.R. § 404.1567(b), as the ALJ found was the case with Mr. Cagle. Dr. Galles, on the other hand, opined that Mr. Cagle would be restricted to lifting and/or carrying up to 10 pounds only occasionally, which is consistent with sedentary work, *see id.* § 404.1567(a), and could never carry any weight frequently. Finally, Dr. Galles stated that Mr. Cagle could never crawl or squat, whereas the ALJ found that he could do both occasionally.

If Dr. Galles's opinion as to Mr. Cagle's limitations is to be credited, then the hypothetical the ALJ gave to the VE did not relate all of Mr. Cagle's impairments with precision, as required, and the Commissioner cannot rely on the jobs the VE identified, even at the sedentary level, to fulfill his step-five burden. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). Of course, the weight to be given Dr. Galles's assessment in making an RFC finding must be viewed with an eye to the later medical treatment Mr. Cagle received, but even this must take into consideration that Mr. Cagle may have a period of disability that does not encompass the entire period of time between his onset date and the

date of the ALJ's decision. The ALJ must make these determinations in the first instance and properly explain his reasoning.

With this understanding of the role that Dr. Galles's September 2003 RFC assessment plays in this case, we can turn to our explanation of the ALJ's error regarding it. The opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the individual's case record." Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *2 (quotation marks omitted); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (discussing the analytical framework of SSR 96-2p). Even if a treating physician's opinion is not entitled to "controlling weight," it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96-2p, 1996 WL 374188, at *4.

Further, "an ALJ must 'give good reasons in the notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted). "[T]he notice of determination or decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion *and the reasons for that weight*.'" *Id.* (emphasis added) (quoting SSR 96-2p, 1996 WL 374188, at *5). An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due

to his or her own credibility judgments, speculation or lay opinion," *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted), and he must provide "specific, legitimate reasons for doing so," *Watkins*, 350 F.3d at 1301 (quotations omitted).

Again, the ALJ's reason for assigning "little probative weight" to Dr. Galles's September 2003 RFC assessment was that there were "troubling inconsistencies in Dr. Galles'[s] records." Aplt. App., Vol. II at 23. We faced an analogous situation in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), where an ALJ declined to give a treating physician's opinion controlling weight because, among other things, the opinion was "not supported by objective medical evidence in th[e] case, including his own records." *Id.* at 1122. We remanded the matter in part because "the ALJ failed to explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record," and concluded that the ALJ's reasoning was not "sufficiently specific to enable this court to meaningfully review his findings." *Id.* at 1123 (quotation omitted). Even after conducting an independent review of the record in its entirety, we were unable to identify any obvious inconsistencies to which the ALJ might have been referring. *Id.* at 1122-23.

Here the ALJ did not identify what the "troubling inconsistencies" were in Dr. Galles's medical records, and we are unable to find any obvious inconsistencies in Dr. Galles's own records that might undermine his assessment

-11-

of either Mr. Cagle's retrospective RFC (that he was unable to work from October 16, 2002, through October 1, 2003) or his prospective ability to work subject to certain restrictions. The ALJ mentioned Dr. Galles's October 24, 2003, progress note, which recorded that Mr. Cagle had trouble returning to work and was filing for another year of disability, but this does not reflect an inconsistency in Dr. Galles's medical records. Thus, as in *Langley*, we are unable to meaningfully review the ALJ's reason for the weight he gave to Dr. Galles's RFC assessment. And although, as we have recently explained, an ALJ is not required to expressly apply in his decision each of the six factors of 20 C.F.R. § 404.1527 when deciding what weight to give to a medical opinion because not every factor will apply in every case, he must at least provide "good reasons in [the] decision for the weight" given to the opinions of treating sources. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ in this case did not do so.

The Commissioner's argument concerning the ALJ's finding as to Dr. Galles's RFC assessment rests on inferences drawn from evidence the ALJ barely referenced in his decision. Therefore, the Commissioner's argument is an impermissible attempt to provide a post hoc rationale in support of the ALJ's decision, *see Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), and in any event is unpersuasive.

*Dr. Reddy*

We now turn to Mr. Cagle's arguments regarding the ALJ's treatment of Dr. Reddy's October 2004 RFC form, in which Dr. Reddy opined that Mr. Cagle could sit for 1 hour at a time and for 2 hours total in an 8-hour work day; could stand for 10-30 minutes at a time and for 1 hour total; and could walk for 10-30 minutes at a time and for 1 hour total. Dr. Reddy also concluded that Mr. Cagle was limited to occasionally lifting no more than 10 pounds and occasionally carrying no more than 5 pounds. Dr. Reddy further stated that Mr. Cagle's ability to use his hands and feet for repetitive motion would be limited, that he could never bend, squat, crawl, climb, or reach, and that he could occasionally handle and finger bilaterally. Dr. Reddy opined that Mr. Cagle could not work 8 hours a day, 5 days a week, because of his need to alternate sitting and standing and because of restrictions on his finger and wrist movements due to CTS. Finally, Dr. Reddy stated that Mr. Cagle's impairments would interfere with the ability to maintain a consistent pace of production, that his symptoms would distract him from job tasks for more than 1 hour per day, that he would miss more than 3 days of work per month, and that his pain medication, then Oxycontin, would interfere with his concentration.

The ALJ did not give "much weight" to the limitations set out in Dr. Reddy's RFC assessment, which were much more severe than those of Dr. Galles's assessment one year earlier, because

the record [did] not show objective signs of the claimant's subjective symptoms and diagnosis and treatment has been based on the claimant's complaints. When seen in the office on September 23, 2004, Dr. Reddy noted that the claimant had very minimal bony or soft tissue tenderness in the paraspinals. He had good strength in both lower extremities and straight-leg-raise was negative.

Aplt. App., Vol. II at 23.

Mr. Cagle argues that the ALJ's reasoning is flawed because the record contains many examples of objective signs supporting Dr. Reddy's assessment. He also correctly points out that Dr. Reddy interpreted the lumbar myelogram and CT scan performed in October 2002 as evidencing spinal stenosis in the lumbar spine, *see id.* at 141, and that most of Dr. Reddy's other medical records repeat his diagnosis of spinal stenosis. The ALJ did not acknowledge Dr. Reddy's opinion as to stenosis. Rather, he stated that there was no evidence of spinal canal stenosis, *id.* at 20, apparently based on the report of Dr. Cynthia Long, who read the test results and thought there was no evidence of "significant spinal canal stenosis" at the L2-L3 and L4-L5 levels, and no "evidence of spinal canal stenosis" at the L3-L4 level, *id.* at 143.

Despite the ALJ's failure to recognize and resolve the conflicting medical evidence of spinal stenosis, we are convinced that the ALJ gave a specific enough reason for giving little weight to the very strict exertional and postural limitations expressed in Dr. Reddy's RFC assessment. As the Commissioner points out, most of the examples of objective physical signs supporting Dr. Reddy's RFC

assessment that Mr. Cagle relies on occurred early in his treatment cycle and were significantly relieved by the ESIs Dr. Reddy administered. It is apparent from the ALJ's extensive catalogue of Dr. Reddy's medical evidence that Mr. Cagle experienced substantial improvement throughout 2004 as a result of his seventh and eighth ESIs in late April and early September combined with his pain medications. After the April ESI, Mr. Cagle reported to Dr. Reddy that he was "a new person," felt "great," and had pain at a level of "2 or 3" in the morning but was completely pain-free after taking his medication. *Id.* at 183. In early June, he reported to Dr. Reddy that he was "doing very well," had pain for an hour in the morning, felt great the rest of the day, and was "pretty active both in and out of the house." *Id.* at 216. During two exams in August he stated that his back pain was "under good control," it occurred for a few hours a day, it was about a "2" on a scale of 0-10, it was "slightly increasing," his pain medications were "very helpful," and that he wanted another injection. *Id.* at 179, 181. In early September, Mr. Cagle had his eighth ESI, and in a follow-up office visit, he reported to Dr. Reddy that he felt "really good since the injection" and denied any other complaints. *Id.* at 215. Dr. Reddy's objective examination findings from each of these office visits indicate rather mild physical symptoms.

The ALJ discussed these medical records in his decision but did not repeat them when he gave little weight to Dr. Reddy's October 2004 RFC assessment. Instead he focused on the findings from the September examination, which

occurred about a month prior to the hearing before the ALJ, but those findings were representative of the others. Thus, regardless of whether Mr. Cagle has spinal stenosis or not, the record shows a pattern of physical improvement as a result of the ESIs and generally mild exam findings just prior to the date of Dr. Reddy's RFC assessment. Therefore, the objective medical evidence from Dr. Reddy's own records does not support the severity of the exertional and postural limitations asserted in his RFC assessment, and we conclude that substantial evidence supports the ALJ's decision to give little weight to those limitations.

We are not convinced, however, that the ALJ provided a sufficient reason for giving little probative weight to the other limitations expressed in Dr. Reddy's assessment, namely, that Mr. Cagle's impairments would interfere with the ability to maintain a consistent pace of production, that his symptoms would distract him from job tasks for more than 1 hour per day, that he would miss more than 3 days of work per month, and that his pain medication would interfere with his concentration. The only reason the ALJ gave for the weight he assigned to Dr. Reddy's opinion was an example of the physical relief that Mr. Cagle obtained from the ESIs and his pain medications. It does not necessarily follow from this physical relief that the other limitations Dr. Reddy assessed are entitled to little probative weight. Of particular concern are Dr. Reddy's opinions that Mr. Cagle's medications would interfere with his concentration, and that he

would miss more than 3 days of work per month, which the VE testified render him unable to "maintain competitive employment," *id.* at 294. The ALJ must address these aspects of Dr. Reddy's opinion more specifically on remand.

B. *Mr. Cagle's Other Issues*

We need not address Mr. Cagle's allegations of error with respect to the ALJ's credibility determination or the jobs the ALJ identified at step five. These findings may be affected on remand by the ALJ's reconsideration of the RFC assessments of Dr. Galles and Dr. Reddy as well as any other evidence Mr. Cagle may properly offer.

### III.

The judgment of the district court is REVERSED. The case is REMANDED to the district court with instructions to remand the matter to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Stephen H. Anderson
Circuit Judge