**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARLA VALLEJO,

    Plaintiff - Appellee,

v.

COMMISSIONER, SSA,

    Defendant - Appellant.

No. 17-1452
(D.C. No. 1:13-CV-01196-MSK)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

The Commissioner of the Social Security Administration appeals from the

district court's decision reversing the Commissioner's denial of Marla Vallejo's

application for benefits and ordering an award of benefits.  Exercising jurisdiction

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand with

directions for the district court to enter judgment in favor of the Commissioner.

---

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Alleging an onset date of November 11, 2009, in April 2010 Ms. Vallejo applied for supplemental security income benefits based upon depression and bipolar disorder. At the alleged onset date, she was 38 years old, with a limited education and no past relevant work. An administrative law judge (ALJ) found that she suffered from a mood disorder, bipolar disorder, and a personality disorder. The ALJ assessed her with the residual functional capacity (RFC) to perform medium work, with certain mental restrictions such as the job must carry a low specific vocational preparation number and require only limited contact with coworkers and the public. A vocational expert opined that Ms. Vallejo could perform jobs available in the national economy. In a decision dated March 29, 2012, the ALJ held that Ms. Vallejo was not disabled and denied benefits.

While the case was before the Appeals Council, Ms. Vallejo submitted a March 30, 2012, mental RFC evaluation from Jerald Ratner, M.D. Dr. Ratner assessed Ms. Vallejo with "extreme" limitations in 13 of 20 functional areas. He opined that she would not be able to "work at any job 8 hours per day, 5 days per week," and that her mental impairments would "cause [her] to be mentally off task" for "100% of the [work] week." Aplt. App., Vol. 2 at 164. The Appeals Council accepted Dr. Ratner's opinion into the record without explanation and denied review.

Ms. Vallejo then raised five arguments for judicial review. The district court found dispositive her contention "that the Appeals Council erred in not properly articulating its assessment of Ratner's opinion in denying Vallejo's request for

2

review." *Vallejo v. Berryhill*, 849 F.3d 951, 953 (10th Cir. 2017) (*Vallejo I*) (internal quotation marks omitted). The district court thus reversed and remanded for the Appeals Council either to determine what weight to give to Dr. Ratner's opinion or to remand for the ALJ to make that determination. *Id.*

On appeal, however, we reversed and remanded for further proceedings in the district court. *Id.* at 956. Relying on *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006), we explained that the Appeals Council is not required to expressly analyze new evidence when it denies review. *Vallejo I*, 849 F.3d at 955. "Rather, the Appeals Council is required only to 'consider' the new evidence—and a conclusory statement that it has done so is sufficient." *Id.* We held that the district court erred in remanding for the agency to weigh the opinion in the first instance. *Id.* at 956. "The district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including Ratner's never-before assessed opinion." *Id.* Accordingly, we remanded "with directions to address Vallejo's remaining arguments and determine if the Commissioner applied the correct legal standards and if substantial evidence in the administrative record—which now includes Ratner's opinion—supports the Commissioner's final decision." *Id.*

On remand, the district court analyzed and rejected Ms. Vallejo's remaining arguments. It then turned to Dr. Ratner's opinion. While acknowledging that the opinion was not tendered until after the ALJ rendered her decision, the district court held that the ALJ had not applied the correct legal standard because she never weighed Dr. Ratner's opinion under the standards for evaluating treating physicians'

3

opinions.  "Thus, because the ALJ (and thus, the Commissioner) never evaluated Dr. Ratner's RFC opinion according to the necessary standards, the ALJ's determination must be reversed."  Aplt. App., Vol. 1 at 153.  And "[f]or essentially the same reasons discussed above, the failure of the ALJ to assess Dr. Ratner's opinion prevents the Court from finding that the ALJ's determination is supported by substantial evidence."  *Id.*

In light of *Vallejo I*, the district court had "some doubt as to whether the 10th Circuit's reasoning in this case authorizes the Court to remand the matter to the Commissioner for further consideration."  *Id.*  But it concluded that a remand was unnecessary because it found "on the current record – including Dr. Ratner's opinion – there is no possible outcome in this case other than the award of benefits to Ms. Vallejo."  *Id.*

> [E]ven if the Court were to remand the matter for further factfinding by the ALJ, . . . the ALJ would not be able to overcome the presumption that Dr. Ratner's [RFC] opinion was controlling[.] . . . [A] remand is unnecessary: the only possible conclusion that the ALJ could reach is that [Ms.] Vallejo suffers from limitations that affect her ability to maintain regular attendance and full-day concentration, and the vocational expert confirmed that those limitations would preclude her from engaging in any meaningful work.

*Id.* at 156.  The district court therefore ordered that Ms. Vallejo be awarded benefits. The Commissioner now appeals.

## DISCUSSION

"We review a district court's ruling reversing the Commissioner's final decision de novo, applying the same standards as the district court.  Thus, we ask

4

whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo I*, 849 F.3d at 954. Only the handling of Dr. Ratner's opinion is at issue in this appeal; Ms. Vallejo has not challenged the district court's rejection of her other challenges to the agency's denial of benefits. There is only one treatment note from Dr. Ratner in the record. But given that both Dr. Ratner and Ms. Vallejo stated that she saw Dr. Ratner multiple times, we consider Dr. Ratner's opinion under the standards applicable to a treating source.

## I.     The agency applied the correct legal standards.

"[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (ellipsis and internal quotation marks omitted). That did not happen here, because the ALJ did not have Dr. Ratner's opinion before her and the Appeals Council incorporated the opinion into the record without discussing it. Nevertheless, the agency did not fail to use the correct legal standards. The ALJ can hardly be faulted for failing to weigh evidence that did not exist when she issued her decision. And as we explained in *Vallejo I*, the Appeals Council simply had to consider the new evidence, not expressly analyze it. *Vallejo I*, 849 F.3d at 955; *see also Martinez*, 444 F.3d at 1207-08. Accordingly, in these circumstances, the Commissioner has not

5

failed to apply the correct legal standard even though neither the ALJ nor the Appeals Council expressly weighed Dr. Ratner's opinion.

## II.    The agency decision is supported by substantial evidence.

We next evaluate whether the agency's decision is supported by substantial evidence.  "Substantial evidence" long has been defined to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

Because the Appeals Council accepted Dr. Ratner's opinion into the record, we consider whether the decision is supported by substantial evidence in the record as a whole, including Dr. Ratner's opinion. *See Vallejo I*, 849 F.3d at 956; *O'Dell*, 44 F.3d at 859.  "Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).  This may be a "peculiar task for a reviewing court," *id.*, but not an impossible one.

6

Under the regulations governing cases filed before March 27, 2017, the agency must give controlling weight to a treating source's medical opinion that "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). But Dr. Ratner's opinion fails to meet these criteria.

Rather than being "well-supported by medically acceptable clinical and laboratory diagnostic techniques," the opinion stands virtually unsupported. The opinion itself offers minimal explanation, identifying as "clinical signs and examination findings" only "Extremes of Agitation" and "Extremes of severely withdrawn Depression." Aplt. App., Vol. 2 at 162. These conclusory statements, however, are inconsistent with the only treating note by Dr. Ratner in the record. In May 2011, he saw Ms. Vallejo, who at that time had been off her Depakote for six months and complained of mood swings. She rated her depression "about at a scale of 4/10" when she was at a low, and "about 1/10" when she was at a high. *Id.* at 195. Dr. Ratner found "no evidence of looseness of associations." *Id.* While "[h]er mood was anxious[,] [h]er affect was appropriate. Delusions nor hallucinations could be elicited. Suicidality/homicidality was negative. Judgement and insight are fair. Cognition is intact." *Id.* He ordered that she resume her Depakote and prescribed additional medications for depression and anxiety.

Dr. Ratner's evaluation also is inconsistent with other substantial evidence in the record. Like Dr. Ratner's own treatment note, earlier treatment notes from the practice fail to support "extreme" limitations in numerous categories. W. Lee

7

McNabb, M.D., saw Ms. Vallejo on several occasions before and after her alleged onset date. The later examinations, however, are not significantly different from the earlier ones. Ms. Vallejo consistently denied voices, visions, thoughts of harming herself or others, sleep or appetite disturbance, and medication side effects. Before her alleged onset date, she rated her depression as a 4/10 (April 2009) and a 3/10 (July 2009), consistent with her May 2011 report to Dr. Ratner. Her worst report was a 6/10 in December 2010, but she stated "she will probably come out of it later." *Id.* at 197. In her first visit after her alleged onset date, in February 2010, Dr. McNabb made the following Mental Status Exam (MSE) assessment:

> MSE is entirely within normal limits in the areas of facial expression and eye contact, orientation and memory, attire and personal hygiene, speech and thought processes, and mood and affect. There are no psychotic manifestations nor are there psychomotor abnormalities. No hand tremor noted. No suicidal/violent ideation. Judgment and insight are fair.

*Id.* at 175. The state agency reviewing psychologist, Mark Suyeishi, Psy.D., characterized this as "a fairly normal MSE with a sober picture of the [claimant]." *Id.* at 56. Dr. McNabb substantially reiterated the MSE assessment in the notes documenting Ms. Vallejo's August 2010 and December 2010 examinations.

In addition, Dr. Suyeishi reviewed the mental medical evidence and concluded that Ms. Vallejo was not significantly limited in many functional areas. The most he assessed were moderate limitations in some areas. He opined that

> [Ms. Vallejo] can follow simple instructions, sustain ordinary routines and make simple work related decisions; cannot work closely with supervisors or coworkers; can accept supervision and relate to coworkers if contact is not frequent or prolonged. Symptoms may interfere with completion of a normal workday or workweek or may cause inconsistent pace. However,

8

when work does not require more than simple instructions, ordinary routines and simple work decision making, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace. [Ms. Vallejo] can perform at a consistent pace without an unreasonable number and length of rest periods when work demands are within [mental RFC] restrictions.

*Id.* at 60. The ALJ took these limitations in account in crafting the restrictions in Ms. Vallejo's RFC.

Dr. Ratner's assessments also are inconsistent with Ms. Vallejo's own reports. Dr. Ratner opined that Ms. Vallejo had been extremely limited since childhood. But Ms. Vallejo did not claim an onset date until November 11, 2009, at age 38. Just months before that, in April and July 2009, she had denied severe depression and significant anxiety when Dr. McNabb examined her. Moreover, although Dr. Ratner assessed Ms. Vallejo with extreme limitations on using public transportation, at the hearing she testified that when she goes out she uses the bus.

In contrast, parts of Dr. Ratner's opinion are consistent with the opinion of Richard B. Madsen, Ph.D. (PC), a consulting examiner. After examining Ms. Vallejo in June 2009, Dr. Madsen noted that her grooming and hygiene were marginal to poor and her affect was blunted. He opined that "[h]er ability to do work-related activities continue[s] to be impaired at a marked level. She will have difficulty maintaining a regular work schedule, focusing and concentrating on work, relating to peers, coworkers, supervisors and the general public." *Id.* at 168. But the ALJ accorded Dr. Madsen's opinion little weight because it was inconsistent with his Global Assessment of Functioning score and "with the record as a whole,

9

demonstrating repeated, normal mental status examinations, good hygiene and dress, and no observations of slowing." *Id.* at 12. One could argue that the addition of Dr. Ratner's opinion bolsters Dr. Madsen's opinion. But several of the reasons the ALJ gave for discounting Dr. Madsen's opinion also apply to Dr. Ratner's opinion, particularly that both opinions are inconsistent with contemporaneous treatment notes. Further, in considering Ms. Vallejo's other arguments, the district court rejected one about the evaluation of Dr. Madsen's opinion, and Ms. Vallejo has not challenged that rejection on appeal.

For these reasons, we are persuaded that the ALJ would not have been required to afford (and would not have afforded) controlling weight to Dr. Ratner's opinion. With Dr. Ratner's opinion not entitled to controlling weight, the contrary evidence in the record, including the contemporaneous treatment notes and the opinion of Dr. Suyeishi, constitutes substantial evidence supporting the ALJ's decision. Accordingly, the district court erred in reversing the judgment of the Commissioner and in ordering an award of benefits.

**CONCLUSION**

The Commissioner did not fail to apply the correct legal standards, and the denial of benefits is supported by substantial evidence in the record as a whole, even including Dr. Ratner's opinion. Accordingly, the district court's judgment is

10

reversed, and this matter is remanded to the district court with instructions to enter judgment in favor of the Commissioner.

Entered for the Court


Gregory A. Phillips
Circuit Judge