**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONALD W. HULSEY,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 07-5150
(D.C. No. 4:06-cv-00194-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

Donald W. Hulsey appeals from a judgment of the district court affirming

the Commissioner's denial of his application for Social Security disability

insurance benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 405(g), we reverse and remand for further proceedings before the Commissioner.

BACKGROUND

Mr. Hulsey has a high school education and work experience as a mixer operator, sales clerk, and, most recently, an animal control officer. In January 2000 he sustained a work injury to his lower back while lifting a dead 100-pound Rottweiler into a truck and sought disability insurance benefits. After the Commissioner denied his application initially and upon reconsideration, Mr. Hulsey requested a hearing before an administrative law judge (ALJ). The ALJ denied benefits, but the Appeals Council reversed and remanded. The ALJ received additional medical evidence, held another hearing, and issued a second decision, which is operative here.

At the time of the second decision, Mr. Hulsey was fifty-two years old. The ALJ found that Mr. Hulsey's degenerative disc disease, hypertension, and history of hemorrhoids, status post-hemorrhoidectomy, were severe impairments but did not meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ also found that Mr. Hulsey's allegations regarding his limitations were not totally credible.

At step four of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4), the ALJ determined that Mr. Hulsey retained the residual functional capacity (RFC) to perform light work, specifically, "to lift

and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six to eight hours during an eight-hour workday; and sit six to eight hours during an eight-hour workday." Aplt. App. at 32, ¶ 6. Based on this RFC, the ALJ found that Mr. Hulsey "is able to perform his past relevant work as an animal treatment investigator (animal control officer)," and that although he would be unable to return to his sales clerk job as he had performed it, "he would be able to perform most retail sales jobs, as [they] are generally performed in the national economy." *Id.* at 33, ¶ 7. Accordingly, the ALJ concluded that Mr. Hulsey was not disabled at step four.

Alternately, the ALJ determined that if Mr. Hulsey could not return to his past relevant work, the Medical-Vocational Guidelines would direct a finding that he was not disabled at step five based on his RFC and vocational factors. The Appeals Council affirmed, making the ALJ's decision the Commissioner's final decision. In the district court, the parties consented to the jurisdiction of a magistrate judge, who affirmed the ALJ's decision. This appeal followed.

## DISCUSSION

Mr. Hulsey raises three issues on appeal: (1) the ALJ did not properly evaluate an opinion of one of his treating physicians, Dr. Kenneth Darvin, and should have recontacted him; (2) the RFC finding was inaccurate; and (3) the credibility finding was flawed. Our review is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether he

-3-

applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Applying this standard of review, we agree with Mr. Hulsey that the ALJ did not properly evaluate Dr. Darvin's opinion and, as a result, do not reach the remainder of his issues. But before explaining our reasons, we pause to note that in the appendix Mr. Hulsey filed with this court, counsel altered the original pagination of the agency transcript, apparently to accommodate the placement of district-court pleadings at the beginning of the appendix. Altering the pagination unnecessarily complicates our review of the agency transcript and the various references to it—the Commissioner has cited to the original pagination, as do the index of exhibits prepared by the agency and the district court's decision. In the future, counsel should refrain from altering the pagination of the agency transcript.

Turning now to the merits of this appeal, our resolution turns on the first issue regarding Dr. Darvin. Therefore, we provide only a brief summary of the medical evidence from other doctors who first treated Mr. Hulsey's back problem. Beginning in March 2000 and ending in November 2000, Mr. Hulsey saw several physicians, including a neurosurgeon, Dr. Malone, whose examinations generally revealed full motor strength in the lower extremities, tenderness on the top of the left sacroiliac (SI) joint, and, with one exception at Dr. Malone's initial examination, negative straight-leg-raise tests. An MRI showed no disc herniation but some degenerative disc disease in Mr. Hulsey's lumbar spine. On May 5,

2000, Dr. Malone released Mr. Hulsey to light work, limited to lifting no more than 15 pounds, and with no bending or twisting. A subsequent bone scan, lumbar myelogram, and CT scan showed minor increased activity at the L2-3 level and a Schmorl's node, but no nerve root impingement or significant sacroiliitis or facet disease.

"[A]t a loss to explain [Mr. Hulsey's] symptoms," Dr. Malone ordered a lumbar discogram with Dr. C. Scott Anthony. Aplt. App. at 250. The result of that test was "completely normal" except for some moderate pain at L4-5 suspicious as a false positive. *Id.* at 232. Dr. Anthony's examination results were unremarkable. To rule out the left SI joint as a cause of pain, Dr. Anthony proposed giving Mr. Hulsey an injection in that joint. After receiving two second opinions, both of which were generally consistent with the findings of Drs. Malone and Anthony, Mr. Hulsey received an SI injection in September 2000 that provided some pain relief. After a second injection in November 2000, there is no indication that Mr. Hulsey visited these doctors again.

The record further reflects that Mr. Hulsey began seeing Dr. Darvin in August 2000 and continued in his care through June 21, 2004, often at planned three-month intervals. Initially, it appears Dr. Darvin treated Mr. Hulsey's hypertension and hemorrhoids rather than his back problem, as some of Dr. Darvin's early exam notes refer to the fact that Mr. Hulsey was seeing other doctors for his back pain. But in November 2001, Dr. Darvin began recording his

-5-

own impressions of Mr. Hulsey's back problem and prescribing Ultram, a pain medication. Dr. Darvin regularly stated that Mr. Hulsey had mild or moderate tenderness in his left SI joint or lumbar spine, decreased range of motion with flexion and extension, and at times an antalgic gait. He also frequently noted that Mr. Hulsey's pain was controlled with Ultram.

At the second hearing before the ALJ on August 25, 2004, a vocational expert (VE) testified that a person with an RFC for a wide range of light work could perform Mr. Hulsey's past job as an animal treatment investigator as well as a number of sales-clerk jobs that did not require the heavy lifting of Mr. Hulsey's past work as a sales clerk, as he had performed it. Mr. Hulsey's attorney then asked the VE whether a person could perform the work the VE had identified if the person could "only sit or let's say stand for 15 minutes at a time for three hours out of an eight-hour day and can only lift 10 pounds occasionally and frequently[,] and never climb, balance, stoop, kneel, crouch or crawl[,] and can only occasionally reach and handle." *Id.* at 447. The VE testified that such a person could not do the work that he had identified. When asked by the ALJ whether the hypothetical RFC was based on an RFC in the record, counsel replied that it was not.

After the hearing, Mr. Hulsey submitted a medical source statement (MSS) from Dr. Darvin dated September 7, 2004. The MSS reflects the limitations in the hypothetical that counsel posed to the VE at the hearing plus several other

limitations: frequently lift and/or carry 10 pounds; occasionally lift and/or carry 10 pounds; stand and/or walk 15 minutes continuously for a total of three hours in an eight-hour workday; sit continuously for one hour and a total of five hours in an eight-hour workday; a need to lie down during the workday to manage pain or other symptoms; difficulty pushing a loaded grocery cart; never climb, balance, stoop, kneel, crouch or crawl; occasionally reach and handle; and no exposure to extreme heat due to an episode of heat exhaustion. The MSS bears the agency designation "Exhibit 24F." *Id.* at 401. It is stamped as received by the agency on October 20, 2004, and the ALJ's decision is dated November 19, 2004.

Mr. Hulsey argues that the ALJ failed to give proper weight to the MSS and failed to explain what weight he gave to it. We agree that there is error with regard to the MSS, but for a slightly different reason than Mr. Hulsey advances: we cannot tell whether the MSS was properly submitted or whether the ALJ was aware of or considered it. In his decision, the ALJ provided a comprehensive review of the relevant medical evidence from all the medical sources, including Dr. Darvin, and the ALJ was careful to refer to the evidence by exhibit number. In the discussions of Dr. Darvin's records, the ALJ referred to exhibits 11F, 14F, 22F, and 23F, but he never referred to Exhibit 24F or discussed the MSS.

The lack of any reference to or discussion of the MSS is problematic. An ALJ has an obligation to determine whether a treating physician's opinion is entitled to controlling weight or, if not, whether it is entitled to some lesser

-7-

weight or none at all. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quotation omitted). The goal is to facilitate meaningful review. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

Given the ALJ's careful identification of all the other evidence by exhibit number and the fact that the MSS was submitted after the hearing, we are hesitant to assume that it was properly submitted and the ALJ considered it. Led by the parties, the district court apparently proceeded on such an assumption, reasoning that by not incorporating the arguably work-precluding limitations in the MSS, the ALJ implicitly declined to give the MSS controlling weight. The district court then reasoned that the ALJ rejected the opinions expressed in the MSS and that this rejection was supported by (1) the ALJ's observation that Dr. Darvin's other medical records were not always consistent and were unaccompanied by "any specific objective clinical findings, such as degree of limitation of motion, and there is no report of positive straight leg raising or of any other neurologic deficits," Aplt. App. at 28; and (2) the ALJ's discussion of evidence from the doctors who treated Mr. Hulsey's back injury in 2000 and from those who examined him or reviewed the file at the Commissioner's request and provided their opinions as to Mr. Hulsey's limitations, all of which suggest that Mr. Hulsey is not as limited as the MSS reflects.

In reaching this conclusion, the district court recognized that the ALJ "could have been more meticulous" in following this circuit's framework for evaluating the opinions of treating physicians, *id.* at 483 (quotation omitted), but excused this shortcoming based on *Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished). While an unpublished decision of this circuit is not precedential, it may be cited for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1. But *Causey* has little persuasive value because it is materially distinguishable from this case. In *Causey*, it was clear that the ALJ had at least considered restrictions that a treating physician had proposed; indeed, the ALJ had adopted all but one of those restrictions, regarding the claimant's need to lie down. 109 F. App'x at 378. We deemed the ALJ's failure to include that restriction in his RFC to be an implicit finding that the treating physician's opinion as to that restriction was not entitled to controlling weight. *Id.* We also observed that the ALJ adequately considered the factors relevant to the analysis of treating-physician opinions as part of determining that the record did not support the claimed restriction. *Id.* Thus, we concluded, the ALJ provided "legally sufficient and factually supported reasons for rejecting this one aspect of [the treating physician's] opinion." *Id.*

In contrast to *Causey*, here the ALJ made no reference to Dr. Darvin's MSS. Nor did he adopt any of its limitations in his RFC. While on at least one occasion we have credited an ALJ's broad statement that he reviewed all of the

-9-

medical evidence, *see Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498-99 (10th Cir. 1992), we decline to do so under the circumstances of this case, where the MSS was submitted after the hearing and there is absolutely no reference to it in a decision that otherwise provides a comprehensive discussion of all the other relevant medical evidence with specific reference to exhibit numbers. The district court's attempt to remedy the ALJ's failure to discuss what weight he gave to the MSS based on his findings regarding Dr. Darvin's treatment records and the medical records of the other doctors overstepped the institutional boundary between the court and the agency and resulted in the resolution of a factual inquiry committed to the Commissioner in the first instance, which was error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Thus, we must remand this matter to the ALJ to make the required findings regarding the MSS, leaving it to the ALJ to determine whether it was properly submitted and, if so, whether the MSS requires recontacting Dr. Darvin under applicable regulations, social security rulings, and case law, as Mr. Hulsey urges. Because the ALJ's consideration of the MSS may affect his RFC and credibility findings, we do not reach Mr. Hulsey's second and third issues.

<u>Conclusion</u>

The judgment of the district court is REVERSED and the case is REMANDED with instructions to remand to the Commissioner for further proceedings consistent with the foregoing discussion.

Entered for the Court


Bobby R. Baldock
Circuit Judge