**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DARLEA ANN DRAY,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 09-7058
(D.C. No. 6:08-CV-00105-RAW-KEW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

Plaintiff Darlea Ann Dray appeals from the district court's judgment

affirming the Commissioner's denial of her applications for disability insurance

and supplemental security income benefits under the Social Security Act.  Taking

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Ms. Dray was fifty-one years old at the time of the Commissioner's decision. She has a tenth grade education and has worked as a deli clerk, food demonstrator, and home-care provider for the elderly. She alleged disability since March 13, 2004, based on hepatitis C and chronic cirrhosis. After her applications were denied initially and upon reconsideration, Ms. Dray had a hearing before an Administrative Law Judge (ALJ) at which she and a vocational expert testified. The ALJ applied the familiar five-step sequential evaluation process used in social security matters, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing the process), and found at step one that Ms. Dray had not performed any substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Ms. Dray's hepatitis, chronic liver disease, and cirrhosis were severe impairments but her mental impairment—depression—was not severe. At step three, the ALJ found that Ms. Dray's impairments did not meet or equal the criteria for a presumptively disabling impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

Proceeding to step four, the ALJ determined that Ms. Dray was not fully credible, found she retained the residual functional capacity (RFC) to perform light work, and decided she had the ability to return to her past work as a deli clerk. Continuing on to step five, apparently in the alternative, the ALJ used the Medical-Vocational Rules as a framework and determined that Ms. Dray was not

disabled because, considering her age, education, work experience, and RFC, she could make a successful adjustment to other work that exists in significant numbers in the national economy. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. The district court affirmed, and Ms. Dray appealed to this court.

## Discussion

Ms. Dray raises one issue on appeal, whether the ALJ erred at step two in finding that her mental impairment was not severe. Our review is "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax*, 489 F.3d at 1084 (quotation omitted).

Ms. Dray's step-two argument fails as a matter of law. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Thus, step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). To that end, a claimant is required to establish, and an ALJ is required to find, only one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)

-3-

(rejecting argument that ALJ erred in failing to find an impairment severe at step two where the ALJ found other impairments were severe). The reason is grounded in the Commissioner's regulations describing step two, which state: "If you do not have *a severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (emphasis added). By their plain terms, the regulations require a claimant to show only "*a severe*" impairment—that is, *one* severe impairment—in order to avoid a denial of benefits at step two. As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Accordingly, the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe.

But that is not to say, as Ms. Dray posits, that the disability evaluation process ends at step two with regard to an impairment found to be non-severe. *See* Aplt. Br. at 23-24. For example, at step four, an ALJ must "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *5 (substantially the same). Although Ms. Dray has not specifically argued that the ALJ's RFC finding was flawed because he did not properly evaluate the medical evidence regarding her mental impairment, we will consider her step-two arguments in that light,

-4-

although we note that we are under no obligation to do so. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (explaining that an issue not formally identified in docketing statement or argued in opening brief is deemed waived); *see also id.* at 1389-90 (concluding that ALJ's alternate disposition of claim at step five foreclosed success on appeal that alleged only step-four error).[1]

Ms. Dray points to the reports of three medical sources who examined her mental impairments. The first, Everett E. Bayne, M.D., performed a psychiatric evaluation in January 2005 and diagnosed Ms. Dray with depressive disorder secondary to chronic illness and a Global Assessment of Functioning (GAF) score of 55.[2] *See* Aplt. App'x, Vol. I at 210-11. Dr. Bayne found that Ms. Dray could add and subtract single- and double-digit numbers but was unable to perform simple multiplication and division, and that her "IQ appears greater than 80." *Id.* at 211. He also concluded that "[w]ith proper treatment, [she] could improve

---

[1] The only challenge to the RFC finding that Ms. Dray iterates consists of a single sentence in the conclusion of her reply brief: "The limitations in intellectual functioning, attention and concentration, memory and math skills as outlined above, were not considered by the ALJ insofar as [Ms. Dray's] residual functional capacity." Aplt. Reply at 7. Not only is this argument insufficiently developed under *Murrell*, but "[t]his court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Nonetheless, we exercise our discretion to do so.

[2] Dr. Bayne used the abbreviation "LOF" rather than "GAF" in assigning a value to Axis V of his assessment. Axis V is used for reporting GAF, which is "the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) (*DSM-IV-TR*). A GAF score of 55 indicates "[m]oderate symptoms . . . OR moderate difficulties in social, occupational, or school functioning." *Id.* at 34.

within the next 12 months," that she was "mentally competent to manage funds without assistance," and that she was "employable." *Id.*

The second medical source, Roy Smallwood, Ph.D., a state-agency physician, completed a Psychiatric Review Technique form in January 2005. Dr. Smallwood found mild functional limitations in maintaining concentration, persistence, and pace, and some short term memory issues, but no limitations in activities of daily living, social functioning, or episodes of extended decompensation. *Id.*, Vol. II at 223, 225. He concluded that Ms. Dray's impairments were not severe. *Id.*, Vol. I at 213.

The final medical source regarding Ms. Dray's mental impairment, Arthur Joyce, M.D., did not examine Ms. Dray, but reviewed the medical evidence and completed a medical interrogatory in November 2006. Dr. Joyce described functional limitations similar to those that Dr. Smallwood found and noted that Ms. Dray has below average intellectual functioning "with expected below average performance in tasks of attention and concentration, immediate and delayed memory," and an estimated GAF score of 70, indicating mild symptoms. *Id.*, Vol. II at 241-42. He concluded that her depression did not meet a Listing. *Id.* at 241.

The ALJ reviewed these three reports in detail in his decision, and specifically considered Ms. Dray's mental impairments at steps two, three, and four of the analytical process. Except for Dr. Bayne's estimation that Ms. Dray's

GAF score was 55, indicating moderate difficulties or symptoms, the reports indicate mild or no limitations in the four broad functional areas evaluated in connection with mental impairments, *see* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); some short-term memory loss; an inability to multiply or divide; and below average intellectual functioning, attention, and concentration. Importantly, as the ALJ noted, none of these medical sources placed any limitations on Ms. Dray's ability to work, and Dr. Bayne specifically considered her employable despite his GAF finding. And while Ms. Dray claims that she has borderline intellectual functioning, which is "an IQ in the range of 71-84," *DSM-IV-TR* at 740, her claim is based on Dr. Bayne's assessment that her "IQ appears greater than 80," Aplt. App'x, Vol. I at 211, and on Dr. Joyce's opinion that she has below average intellectual functioning. However, Dr. Bayne did not assess a specific IQ or diagnose borderline intellectual functioning, he only estimated that Ms. Dray's IQ was greater than 80; and in any event, he specifically concluded that Ms. Dray was employable. And Dr. Joyce did not suggest that Ms. Dray's below-average intellectual functioning limited her ability to work. We therefore see no error in the ALJ's RFC finding, which omitted any limitations related to Ms. Dray's mental impairment.

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge