FILED
United States Court of Appeals
Tenth Circuit

May 7, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BRIAN D. PAYTON,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 11-6199
(D.C. No. 5:10-CV-00253-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **MATHESON**, Circuit Judges.

Brian D. Payton appeals from the district court's order affirming the Social

Security Commissioner's denial of his application for disability insurance

benefits. Mr. Payton argues that (1) the Administrative Law Judge (ALJ) failed

to evaluate the medical evidence properly; (2) the ALJ erred in finding that he

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

had the residual functional capacity (RFC)[1] to perform substantial gainful activity; and (3) the ALJ erred in her credibility analysis. "We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). Our review is limited to those matters preserved in the district court proceedings and therefore properly presented on appeal. *Krauser*, 638 F.3d at 1326. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Mr. Payton sought disability benefits based on back, foot, and ankle problems. Benefits were denied initially and on reconsideration. Upon Mr. Payton's request, the ALJ held a hearing. The ALJ then denied benefits at step five of the five-step sequential evaluation process for determining disability. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps). Specifically, the ALJ found that (1) Mr. Payton had not engaged in

---

[1]RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

substantial gainful employment since May 2, 2007, his alleged disability onset date; (2) he has severe impairments of degenerative disc disease of the lumbar spine and back and left ankle/foot pain; (3) these impairments, singly or in combination, did not meet the medical listings; (4) he cannot perform his past relevant work; and (5) he has the RFC to perform various light and sedentary jobs that exist in significant numbers in the national economy.

After the Appeals Council denied Mr. Payton's request for review, the ALJ's decision became the Commissioner's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On judicial review, the district court adopted the magistrate judge's thorough report and recommendation to affirm the Commissioner's denial of benefits. This appeal followed.

## II. DISCUSSION

### A. *Evaluation of the Medical Evidence*

Mr. Payton first argues that the ALJ did not properly evaluate the medical evidence because she did not adequately consider the opinion of Dr. Babb, his treating doctor of sixteen years. According to Mr. Payton, Dr. Babb's opinion that Mr. Payton suffered from significant limitations was supported by the medical evidence from other doctors. In addition, Mr. Payton faults the ALJ for failing to indicate the amount of weight she gave to Dr. Babb's opinion.

When analyzing a treating doctor's opinion, the ALJ first considers "whether the opinion is well supported by medically acceptable clinical and

-3-

laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If so, the ALJ must give the opinion controlling weight. *Id.* But if the ALJ decides "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* Relevant factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(d).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotation marks omitted). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Id.* (internal quotation marks omitted). "If the ALJ rejects the opinion completely, [s]he must then give

-4-

specific, legitimate reasons for doing so." *Id.* (internal quotation marks omitted).

In this case, the ALJ expressly did not give controlling weight to

Dr. Babb's opinion:

> [Dr. Babb] apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Mr. Payton], and seemed to uncritically accept as true most, if not all, of what [Mr. Payton] reported. Furthermore, Dr. Babb's opinion contrasts sharply with his own objective record and treatment history and the other evidence of record. Moreover, the doctor's opinion is not supported by a longitudinal basis and [is] inconsistent with the other substantial evidence in this case record; therefore, controlling weight cannot be given to his opinion as a treating source.

Aplt. App. at 27.

We conclude the ALJ's decision not to give controlling weight to

Dr. Babb's opinion is supported by substantial evidence and is free from legal

error. And she adequately explained her decision. As the ALJ determined,

Dr. Babb's opinion was not "supported by medically acceptable clinical and

laboratory diagnostic techniques," and it was not "consistent with the other

substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077.

Mr. Payton first saw Dr. Babb for back and ankle problems nearly a year

after Mr. Payton injured his back. Dr. Babb's treatment notes of April 22, 2008,

indicate, apart from a recitation of Mr. Payton's subjective complaints, that he

had tenderness to the lumbar spine with limited range of motion with extension

and flexion, pain with bending and twisting and straight leg raising, good strength

to the lower extremities, difficulty changing position from sitting to lying and the

-5-

reverse, difficulty getting up from a chair, tenderness over his left foot and ankle, no foot or ankle deformity, and good foot strength. Dr. Babb recommended that Mr. Payton see a back specialist and an orthopedist.

Three months later, on July 24, 2008, Dr. Babb again reported that Mr. Payton had tenderness and pain in his low back and right hip. Dr. Babb gave Mr. Payton a back book and prescribed Flexeril and Ibuprofen. On March 13, 2009, Dr. Babb again noted tenderness.

On May 7, 2009, Dr. Babb noted that he had "filled out [Mr. Payton's] paperwork for his disability. He is unable to work." Aplt. App. at 297. Dr. Babb provided a disability assessment in the Medical Source Statement that Mr. Payton is unable to work; can lift frequently or occasionally less than five pounds; can stand, walk, or sit for less than one hour of an eight hour day; must lie down during a normal work day; can never climb, balance, stoop, kneel, crouch, or crawl; and can occasionally reach. As the ALJ concluded, Dr. Babb's opinions were not based on a sufficient treatment history or testing, and his treatment notes do not indicate Mr. Payton is disabled. Our review of the record confirms that the ALJ's conclusions are supported by substantial evidence.

The ALJ also found that Dr. Babb's opinion was inconsistent with the other medical evidence in the record. Dr. Richards saw Mr. Payton soon after he sustained work-related injuries to his left foot and ankle in March 2006, and in April 2007 for his back injury. Dr. Richards treated the foot and ankle sprain

-6-

with rest, exercises, and Ibuprofen.  He released Mr. Payton to return to work two weeks after the injury.

In his May 1, 2007, treatment notes for the back injury, Dr. Richards diagnosed lumbar strain and lumbago, with tenderness, soreness, and swelling. He took Mr. Payton off work and told him to take Ibuprofen.  The following week, on May 8, Dr. Richards noted that Mr. Payton still had soreness and stiffness in his back and assessed him with lumbar spondylolysis with lumbar strain and a bulging disc at L5-S1.  On May 15, Mr. Payton informed Dr. Richards that he was doing well, his pain was at a five on a scale of one to ten, and he had no difficulty except when squatting or bending to the right – a movement duplicating his injury.  Dr. Richards again diagnosed a lumber sprain and an underlying congenital defect to Mr. Payton's back.

On May 19, Dr. Richards reported that Mr. Payton's back was much better, he had a normal range of motion, and the lumbar sprain had resolved. Dr. Richards released Mr. Payton to return to work with restrictions and encouraged him to wear a back brace.  By June 7, Mr. Payton's pain had decreased to a three or four, but he still had some tenderness and decreased range of motion in his right lumbar spine.  Dr. Richards again noted that Mr. Payton could return to work with restrictions.  He encouraged Mr. Payton to continue with physical therapy.  In his final treatment note, dated June 21, Dr. Richards reported that Mr. Payton continued to improve and that Mr. Payton felt he was

doing well and could do most activities without increased pain or symptoms. Dr. Richards again recommended that Mr. Payton return to work with restrictions.

Dr. Rosson saw Mr. Payton two months later on August 2, 2007, for a workers compensation examination. With respect to the back, Dr. Rosson noted tenderness in the lumbosacral region. As to the ankle and foot, Dr. Rosson, noted tenderness, decreased muscle strength, persistent and chronic pain and weakness, range of motion abnormalities, chronic tendinitis, tenosynovitis, and ligamentous instability. He attributed a thirty percent permanent partial impairment to the back and a forty percent permanent partial impairment to the left foot and ankle. Dr. Rosson recommended that Mr. Payton undergo vocational rehabilitation for work that was more sedentary than the heavy work he had performed previously.

Dr. Stow, a consulting doctor, examined Mr. Payton on April 3, 2008. Dr. Stow reported that Mr. Payton had a left limp, used no assistance devices, stood slowly from a chair, mounted the examination table with minor difficulty, had normal strength and mostly unrestricted range of motion, right hip pain, and left ankle pain and stiffness.

Finally, Dr. Woodcock, a state medical consultant, reviewed the medical reports of Drs. Richards, Rosson, and Stow when considering Mr. Payton's initial request for benefits. Dr. Woodcock concluded that Mr. Payton was not disabled.[2]

---

[2]The ALJ gave significant weight to Dr. Woodcock's opinion that Mr. Payton was not disabled, noting that his decision was consistent with the

Based on all of the medical evidence, which the ALJ considered in her decision, no doctor, other than Dr. Babb, believed Mr. Payton was disabled. Dr. Richards and Dr. Rosson both indicated that Mr. Payton was capable of working, and Dr. Stow's report does not indicate otherwise. Thus, the ALJ appropriately declined to give controlling weight to Dr. Babb's opinion.

Even assuming the ALJ properly failed to give Dr. Babb's opinion controlling weight, Mr. Payton contends that Dr. Babb's opinion was entitled to some weight, but the ALJ failed to discuss what lesser weight she gave his opinion. From her decision, we conclude she gave no weight to Dr. Babb's opinion. Although an explicit statement to that effect would be preferable, she did state that she had considered the medical evidence in accordance with the regulations and applicable Social Security Ruling that discuss the weight to give a treating doctor's opinion. *See generally* SSR 96-2p, 1996 WL 374188, at *5 (requiring ALJ to be "sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight"). In accordance with our general practice, we take her at her word. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173

---

medical record.

(10th Cir. 2005) ("[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.").

Upon review, we conclude the ALJ appropriately gave Dr. Babb's opinion no weight. The ALJ's reasons for declining to give controlling weight to Dr. Babb's opinion also support her giving the opinion no weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that ALJ need not discuss all six factors). Dr. Babb's opinion lacked consistency with the record as a whole. He did not treat Mr. Payton for his back or foot and ankle problems over a long and continuous period of time and did not begin treating him for nearly a year after the back injury and nearly two years after the foot and ankle injury. Also, his disability opinion contrasts with his treatment notes and history. Thus, because the record supports giving Dr. Babb's opinion no weight, a remand for further proceedings is not warranted.

Mr. Payton also contends the ALJ failed to identify what weight, if any, she gave to Dr. Rosson's opinion that Mr. Payton could only perform sedentary work after receiving vocational training. Dr. Rosson, however, did not state that Mr. Payton could do only sedentary work. He indicated that Mr. Payton needed to do work that was more sedentary than the heavy work he had been performing.

Finally, Mr. Payton argues that the ALJ erred by failing to re-contact Dr. Babb for clarification. Because he makes this argument for the first time on

appeal, we will not consider it. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994).

### B. Residual Functional Capacity Determination

Mr. Payton also argues that his RFC, with limited ability to sit, stand, and lift, prevents him from engaging in substantial gainful activity. He points out that when the vocational expert (VE) responded to a hypothetical question including these three limitations from Dr. Babb's Medical Source Statement, the VE concluded Mr. Payton could not perform any jobs. We, however, have concluded that the ALJ properly afforded no weight to Dr. Babb's opinion and instead gave weight to the supported medical records of Drs. Richards, Rosson, and Stow, which establish Mr. Payton's ability to perform light work and do not establish sitting, standing, and lifting limitations. Thus, we conclude that substantial evidence supports the ALJ's determination that Mr. Payton has the RFC to perform the various light duty jobs identified by the VE.

### C. Credibility Analysis

Mr. Payton argues that the ALJ failed to make a proper credibility assessment and should have found him to be credible. He contends the ALJ did not properly evaluate his complaints of pain and based her determination on mistaken observations of the medical record. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such

-11-

determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).

The ALJ determined that Mr. Payton's medically determinable impairments could reasonably cause the symptoms he alleges, including pain, but the ALJ also determined that his statements concerning their intensity, persistence, and limiting effects were exaggerated and therefore not credible because they were inconsistent with her RFC assessment. In so determining, the ALJ found that (1) the medical evidence set forth above did not support Mr. Payton's assertion that he is unable to work; (2) his daily performance of household chores and activities was inconsistent with his complaints of pain; (3) he had never been hospitalized and had never undergone surgery for his severe impairments; (4) at the hearing, his gait and walking speed were normal, and he moved, sat, and rose with no signs of distress; (5) although he has some mild to moderate pain, no medical evidence supports his allegation that he must lie down throughout the day and therefore cannot work; and (6) although he complains of side effects from his medication, the record does not establish a significant or ongoing problem, and he never reported any side effects to his physicians.

Our review of the record convinces us that substantial evidence supports the ALJ's credibility determination. The ALJ properly evaluated Mr. Payton's complaints of pain and based her credibility decision upon the medical record.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge